## *CHESNUT v. CAPEY.

No. 5626. Opinion Filed January 9, 1915.

Rehearing Denied March 2, 1915.

(146 Pac. 589.)

**EXECUTORS AND ADMINISTRATORS—Wills—Right to Appointment —Revocation of Will.** Where, in a proceeding in the district court to have an administrator appointed, it appeared that a Choctaw Indian of full blood had died leaving his allotment and personal property and also a will dated June 5, 1908, disinheriting his wife, him surviving, executed pursuant to an act of Congress approved April 26, 1906, (chapter 1876, sec. 23, 34 Stat. 145), which required it to be acknowledged before and approved by a United States Commissioner and also a will executed August 16, 1913, disinheriting his wife and not acknowledged and approved pursuant to said act as amended by an act approved May 27, 1908 (chapter 199, 35 Stat. 312), and also, on January 6, 1913, an instrument in writing containing a clause revoking all other wills theretofore executed by him, executed pursuant to Rev. Laws 1910, sec. 8358, **held,** that the will executed August 16, 1912, was void, and that the revocatory clause therein of no effect to revoke said will of June 5, 1908, for failure to comply with said act of Congress as amended, and that the revocatory instrument executed August 16, 1912, pursuant to Rev. Laws, 1910, sec. 8358, had the force

*Appealed to U. S. Supreme Court.

and effect to revoke all prior wills, and that deceased died intestate. **Held,** further as between the widow and one claiming to be a nephew and another claiming to be an adopted son of deceased, that letters of administration were properly granted to the widow.

(Syllabus by the Court)

*Error from District Court, Marshall County;*

*Jesse M. Hatchett, Judge.*

The probate of an alleged will of Wallace Capey, deceased, offered for probate by C. C. Chesnut, was protested by Margaret Capey, and, from a judgment of the district court on appeal from the county court sustaining the protests, Chesnut brings error. Affirmed and remanded, with directions.

*Rider & Hurt,* for plaintiff in error.

*F. E. Kennamer* and *Stuart, Cruce & Cruce,* for defendant in error.

TURNER, J. On February 3, 1913, Harmon Kaney, in the county court of Marshall county, filed his petition asking to be appointed administrator of the estate of Wallace Capey, whom, he alleged, was a Choctaw Indian of full blood, who died on January 30, 1913, leaving an allotment of land and personal property of the value of $200, leaving also petitioner, his nephew, him surviving, as his only heir at law. On February 10, 1913, Margaret Capey protested against the appointment and alleged her right to be appointed on the ground that she was the widow of deceased. On February 14, 1913, came one March and another Woodruff and protested against the right of either to administrate on the estate, and asked that a certain instrument in writing, purporting to make proponents his sole legatees and to have been executed by deceased on August 16, 1912, be probated as his last will and testament and an executor appointed. On March 10, 1913, came Willie Kaney and alleged himself to be the

adopted son of deceased, and denied that Margaret Capey was his widow, and protested the probate of the alleged will in favor of March and Woodruff. On the same day came C. C. Chesnut, plaintiff in error, and exhibited an alleged last will and testament of deceased dated June 5, 1908, wherein he disinherited his said wife and made Chesnut his sole legatee, and prayed the court to probate the same. On March 13, 1913, came Margaret Capey and protested its probate, and alleged that the same had been revoked by a certain instrument in writing executed August 16, 1912, and again by another such instrument, executed by deceased on January 6, 1913, revoking all prior wills. After issue joined by all parties in interest, there was trial to the court and judgment in effect sustaining the protests and holding in effect that Wallace Capey died intestate and that Margaret Capey was his only heir at law; whereupon all other parties appealed to the district court. There, on trial anew, that court held with the county court and sustained the protests of the wills in question, and, among other things, specifically found that deceased was a full-blood Choctaw, that Margaret was his wife, and that in making his will to Chesnut disinheriting her he fell within the proviso contained in act of Congress of April 26, 1906, c. 1876, par. 23, 34 Stat. 145, which reads:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein; provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States commissioner."

And the Chesnut will was made in conformity thereto. This finding was correct and stands unchallenged. The court also found that the Chesnut will was revoked by the will to March and Woodruff, and again by an instrument in writing executed

by the testator on January 6, 1913, containing a clause revoking all prior wills. From that part of the judgment of the court so holding, Chesnut alone appeals.

The March and Woodruff will is like the Chesnut will, in that it disinherits the wife of the testator, but is unlike the Chesnut will, in that it contains a clause revoking all prior wills, and is not acknowledged before and approved by a judge of the county court, as required by the amendatory act of May 27, 1908, c. 199, 35 Stat. 312. In holding that this will revoked the Chesnut will, the court found that, although the same was not executed in form to satisfy the act of Congress, *supra,* and hence was not sufficient to disinherit the wife of the testator, yet, being executed in form to satisfy the law of the state in force at that time, the same was sufficient to revoke the Chesnut will. Therein the court erred. Disinheriting his wife, as it did, said will was required to be executed in form to satisfy the act of Congress, as amended, and, as it did not, the same was defective and the revocatory clause of no effect. On this point this case is governed by *Leard et al. v. Askew,* 28 Okla. 300, 114 Pac. 251, Ann. Cas. 1912D, 234, where in the syllabus we said:

"Though the subsequent will contains a clause expressly revoking the earlier will, yet, if such subsequent will is defectively executed, the revocatory clause will not take effect."

But did the following instrument revoke both the Chesnut and the March and Woodruff wills? The court held that it did. It reads:

"Revocation of Will.

"I, Wallace Capey, of Marshall county, state of Oklahoma, being in poor health, but of sound mind, do hereby revoke will executed by me and which I understand is in the possession of Geo. S. March, attorney at law, Madill, Oklahoma, and wherein I will, devise and bequeath all of my property, both real and personal, to said Geo. S. March and Woodruff in equal shares; and any and all other wills at any time heretofore executed by me.

"In witness whereof, I Wallace Capey, have in this revocation of wills subscribed my name this 6th day of January, 1913.

his

"Wallace X Capy.

mark

"I signed the name of Wallace Capy hereto at his request and in his presence, he not being able to write it, this January 6th, 1913.

"[Signed]     P. W. Minter.

"Personally appeared before me a notary public, in and for Marshall county, Oklahoma, Wallace Capy known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he signed the same of his own free will without persuasion or threats.

"Witness my hand and seal this 6th day of January, 1913.

"[Signed]     P. W. Minter, Notary Public.

"My commission expires Jan. 16, 1916.

"Subscribed by Wallace Capy in the presence of each of us, the undersigned, and at the same time declared by him to be a revocation of the will therein referred to, and any and all other wills at any time executed by him; and we thereupon, at the request of Wallace Capy, in his presence, and in the presence of each other, sign our names hereto as witnesses this 6th day of January, 1913, at the home of the said Capy.

"[Signed]     P. W. Minter.

"Eastman Kainey."

In support of said holding, counsel rely on Rev. Laws 1910, sec. 8358, which reads:

"Except in the case in this article mentioned, no written will, or any parts thereof, can be revoked or altered otherwise than: First. By a written will or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator. * * *"

It is Chesnut's contention that this statute does not apply to the revocation of the will to him, and that, if it does, said instrument of revocation is required by said statute to be executed with the same formalities with which the will to him was executed, i. e., to be acknowledged before and approved by a judge of the county court as required by the amendatory act of May 27, 1908. And that, as such was not done, the same was ineffective to work a revocation. But the court did not take that view of the law, and held that section 8358, *supra,* was applicable to the revocation of wills, and that, as the instrument of revocation was executed with the formalities prescribed thereby, the same was sufficient to work a revocation of all prior wills. Was the court right in holding that said statute applied? If he was, we will then determine what the statute means when it says that the instrument of revocation must be executed with the same formalities with which a will should be executed. When Congress provided, as it did, by that act, *supra,* and the amendment thereto, that "every person of lawful age and sound mind may by last will and testament devise and bequeath all his estate, real and personal, and all interest therein," Congress was legislating for the Indians, and thereby in effect said to this testator and all other Indians of lawful age and sound mind that thereafter, as to their lands, concerning which Congress had the right to legislate, the same might be devised by will, and in the manner of so doing, the testator was to be governed by the statute of wills in force in the state at the time of the making of the will, just as is every other citizen of the state. That is, with one exception, to wit, that no will of a full-blood Indian devising real estate shall be valid if such last will and testament disinherits, among others, his wife, unless the will be acknowledged before and approved by a judge of the county court. By that act Congress did not intend to affect the making or revocation of wills devising land concerning which Congress had no right to legislate, but intended that the Indian should, in

the manner of both making and revoking wills devising those lands, be governed by the statute on wills in force in the state at the time the will is made or attempted to be revoked. Neither did Congress intend to legislate concerning the revocation of wills authorized to be made by the act. This for the reason that Congress well knew that the manner of revoking wills was fully provided for by the statute, *supra,* extended to and put in force throughout the state by the schedule of the Constitution. It is clear, had not Congress inserted the proviso, the state statute would have furnished the machinery for making this will as a whole. As it is, the will was executed pursuant thereto in every particular except as to its acknowledgement before and approval by a judge of the county court. By implication, then, we gather that Congress intended the state statute to apply in all matters concerning, not only the execution, but the revocation, of this will, except those matters wherein Congress had expressly otherwise provided. In other words, Congress intended that the state law should yield only so far as it interfered with the operation of the act of Congress.

In *McDermott v. Wisconsin,* 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, the court, speaking to the right of Congress to regulate interstate commerce, said:

"* * * To the extent that the state law interferes with or frustrates the operation of the acts of Congress, its provisions must yield to the superior federal power given to Congress by the Constitution."

The same doctrine is true as to legislation by Congress for Indians.

The acts must be construed together. *In Walker et al. v. Brown,* 141 Pac. 681, the Indian was prevented by act of Congress from alienating, conveying, or incumbering his property other than by last will and testament. Rev. Laws 1910, sec. 8341, provided:

"No person who is prevented by law from alienating, conveying, or incumbering real property, while living shall be allowed to bequeath same by will."

Construing these provisions together, this court in effect held that section 8341 was in force throughout the state and was applicable to all except the lands of this Indian concerning which Congress had a right to and did legislate, and that, although he was prevented from alienating, conveying, or incumbering his lands while living, he had the right to alienate the same by last will and testament, which of course took effect only after death. And so, as the court was right in holding that our statute on wills gave way to the act of Congress, *supra,* only so far as said act requiring this will to be acknowledged before and approved by a judge of the county court, and that said statute was applicable to a revocation of this will when made, we will next determine whether the instrument in question was executed in compliance with the statute and with formalities sufficient to work a revocation of the Chesnut will. Stripped to the point, the statute reads:

"* * * No written will * * * can be revoked * * * otherwise than: * * * By a written will or other writing or the testator, declaring such revocation, * * * and executed with the same formalities with which a will should be executed by such testator. * * *"

It is urged by Chesnut that, when the statute says the revocatory instrument must be executed with the same formalities with which a will should be executed, it means with the same formalities with which the will to him was executed, and hence, as the testator failed to acknowledge the same before and the same was not approved by a county judge, it was void and without effect to work a revocation. Not so. When the statute required that instrument to be executed with the same formalities with which a will should be executed, it meant with the same formalities a will was then required to be executed by the statute in force in the state. Of course, the statute had no reference to the act for the

reason that the latter was not in existence at the time the former was passed, and hence could not have been within its contemplation. In the operation of these two laws, one by the state, the other by Congress, we see the effect of two legislative sovereignties acting within their respective spheres. But there is no conflict. In our opinion Congress by the act in question never intended to change the well-known rule that the law governing wills is that of the place where the property is located so far as real estate is concerned, and, as to personal property, the *lex domicilii,* except in the one particular mentioned in the proviso of the act. We are therefore of opinion that the statute on wills in force in this jurisdiction was applicable to the testator except in so far as Congress had a right and did legislate by the act in question, and that, as Congress never thereby intended to legislate upon the subject of the revocation of a will made pursuant thereto, the statute of the state governed, and, as it appears that this instrument of revocation was in form sufficient to satisfy the statute, the judgment of the trial court should be affirmed.

But before leaving the case our attention is called to the brief of Harmon Kaney filed herein. He has joined in this proceeding in error and his separate proceeding in error in cause No. 5626 has been, by all parties in interest, considered consolidated with this proceeding. His brief consists of three type-written pages, containing no assignments of error. In it he says that he is "a nephew of the said deceased, and it is his contention that he is next of kin and entitled to inherit the estate of said deceased either under the law of descent and distribution of Oklahoma, or under the law of descent and distribution of Arkansas put in force in Indian Territory prior to statehood," and contends that the latter is in force. No particular ruling of the court on a question of law or fact is complained of, and we presume we are invited to assume him to be a nephew, and say which of those statutes govern the devolution of this estate, and to determine his distributive share thereunder. But we decline, for the

reason that neither the county court nor the district court find that he is a nephew of the deceased, but find generally that he is no heir of deceased, and therefore not entitled to administer on the estate. If this can be said to be a finding against his claim that he is a nephew, still we decline to pass upon the question of whether he is or is not, for the reason that counsel have failed to comply with rule 25 of this court (137 Pac. xi), in that they failed to set forth such material parts of the facts and other parts of the record as are necessary to a full understanding of the question sought to be presented. But he is not concluded. Let the judgment be affirmed, but the cause remanded, not for the purpose of reopening the issues as to who is entitled to administer on this estate or for further inquiry as to whether Wallace Capey died intestate, as the same is settled here, but for the purpose of determining who is entitled to share in his estate and the distributive share of each.

The judgment is therefore affirmed, but the cause is remanded, with directions to proceed in accordance with this opinion.

All the Justices concur.