PHILLIPS v. SMITH, Gdn.

*100 P. 2d 249.*

No. 28054.  October 17, 1939.

Rehearing Denied March 5, 1940.

Porter Newman, of Durant, for plaintiff in error.

MacDonald & MacDonald, of Durant, for J. T. Billey.

BAYLESS, C. J.  Armond Billey, an enrolled Mississippi Choctaw Indian of the full blood, No. 352, died March 26, 1932, while a resident of Bryan county, Okla.  He had been married, but was divorced at the time of his death, and left surviving him as his sole and only heir at law, J. T. Billey, a minor son.

September 24, 1932, Jesse Roberts filed a petition for the probate of an instrument. dated February 20, 1932, alleged to be the last will and testament of the decedent, and said instrument reads, in part:

"* * * hereby revoking and cancelling all other or former wills by me at any time made.

"(1)  I direct the payment of all my just debts, and funeral expenses.

"(2) I give and devise to my son G. T. Billey, eighty (80) acres of my land, being a portion of my homestead filings.

"(3) I give and devise, Nellie Billey, my niece, and Carl Billey, my nephew, and Jesse Roberts, my friend, all the rest, residue and remainder of my real property, located in the County of Bryan State of Oklahoma, consisting of 200 two hundred acres, share and share alike.

"(4) I hereby appoint and designate my friend, Jesse Roberts, sole executor without bond. * * *"

It is admitted that this will has the effect of disinheriting the minor son, that it was executed in full conformity with the laws of Oklahoma, and that it was not acknowledged and approved in conformity with the requirements of the Act of Congress of May 27, 1908 (ch. 199, 35 St. 312). The petition alleged that decedent "left an estate in Bryan county consisting of real property, the same being two hundred acres of land, this land being his allotment or distributive share of the lands of the Misssissippi Choctaw Tribe of Indians in Oklahoma."

October 6, 1932, Victor C. Phillips filed a petition in the aforementioned proceeding for the probate of an instrument dated June 12, 1931, alleged to be the last will and testament of the decedent, and this instrument reads in part:

"1. I direct the payment of my just debts and funeral expenses.

"2. I give and devise to my former wife, Eula Billey, the sum of Five Dollars.

"3. I give and devise to my son G. T. Billey the sum of Five Dollars.

"4. I give and devise to Victor C. Phillips, who has assisted me very materially in the last five years in the way of giving me medicine, supplies and clothes, all the rest, residue and remainder of my property, both real and personal, wherever located, and all of my rights, title, and interest in and to any government moneys coming to me by my being a member of the Choctaw Tribe of Indians.

"5. I hereby appoint and designate Victor C. Phillips as the executor of this will under such terms as the court shall designate."

It is admitted that this will has the effect of disinheriting the minor son; that it was executed in full conformity with the laws of Oklahoma, and that it was acknowledged and approved in full conformity with the act of Congress, supra. This petition alleged that the decedent left "an estate consisting of personal property and real estate located in Bryan county, Oklahoma, and of the probable value of $5,000.00."

At the same time Phillips filed a contest on the petition of Roberts based on several grounds, the only one of which concerns us is that the will presented by Roberts was not executed and attested as required by law, referring to the provision of the act of Congress, supra.

October 7th, Eula Smith, mother and guardian of J. T. Billey, a minor, filed a protest against the probate of a will, presumably the Roberts will, upon general grounds. On October 8th, she filed a protest against the probate of the Phillips will on general grounds, and upon the specific ground that it was revoked by the Roberts will.

Upon trial in the county court the Roberts will was admitted to probate, and Phillips appealed to the district court. Upon trial in the district court that court made findings of facts and entered a judgment, reading in part:

"1. That the will of Armond Billey, dated June 12, 1931, in favor of Victor C. Phillips, was made and executed as provided by the federal and state law of the state of Oklahoma and was a legal will.

"2. That after Armond Billey made the will of June 12, 1931, in favor of Victor C. Phillips, he thereupon, on the 12th of February, 1932, made another will, which said instrument was executed in conformity with the requirements of the statutes of the state of Oklahoma, but which was not in keeping with the federal statutes, and was in no wise approved as provided by the laws of the United States, and was not acknowledged before a Judge of the United States

Court, or any United States Commissioner, or by a judge of the county court of the state of Oklahoma, but that said purported will had a provision in it revoking all former wills.

"It is therefore ordered, adjudged and decreed by this court that the revoking clause in the will, under date of February 20, 1932, is a valid revocation, and that it revokes the will under date of June 12, 1931, in favor of Victor C. Phillips; and it is further ordered that both will be denied probate."

The primary point argued by Phillips on appeal is that the trial court erred in holding that the later will was the last will and testament of the deceased and revoked the earlier will.

Phillips argues that the later will is invalid under our decision in Chesnut v. Capey, 45 Okla. 754, 146 P. 589, because it was not acknowledged and approved as required by Act of Congress, April, 26, 1906, as amended by Act of Congress, May 27, 1908. He argues that lacking compliance with said act it fails as a will, and, if this contention is rejected, that the later will is not entitled to probate as a revoking instrument because it appears dehors the instrument that its dispositive clauses fail.

As pointed out by Phillips, the effect of our decision in Chesnut v. Capey, supra, is to hold that acknowledgment and approval according to the acts of Congress, supra, are a part of execution and attestation where the later will has the effect of revoking a prior will executed in compliance with the acts of Congress, supra, and that such subsequent will is not admissible to probate unless it was so executed. He says this opinion has not been criticized or departed from since. This is not accurate. In Armstrong v. Letty, 85 Okla. 205, 209 P. 168, we held that the requirements of the acts of Congress, supra, were not part of the execution and attestation of wills in Oklahoma in testing the admissibility to probate, but only affected the construction of the will and the validity of the devises thereunder.

This is so because the power of Congress to control the disposition of an Indian's property applies only to the property allotted to the Indian. It is distinctly pointed out by the Supreme Court of the United States in Blundell v. Wallace, 267 U. S. 373, 69 L. Ed. 664 (appealed from our decision in that case reported in 96 Okla. 26, 220 P. 40):

"* * * It must be borne in mind, the restriction was in respect of the specified lands, and did not affect the testamentary power of the Indians to dispose of their alienable property, which power, on the contrary, has been fully recognized, first, by an extension of the appropriate laws of Arkansas over the Indian Territory, and then, upon the admission of the state of Oklahoma, by the substitution therefor of Oklahoma law."

In other words, Congress has the power to say in what manner the Indian may dispose of his restricted property and may permit it to be done by will, but Congress has no power to govern the admissibility of wills to probate in Oklahoma, even though such a will attempts to dispose of property subject to the control of Congress. That is the province of the people of Oklahoma. All that Congress has undertaken to do is to say how the will shall be executed in order to validly dispose of restricted property, and this is a matter of construction on distribution and is not a matter of execution and attestation on the issue of admitting the will to probate.

Armstrong v. Letty, supra, does not mention Chesnut v. Capey, supra, but it does overrule other Oklahoma decisions to the same effect. Therefore, insofar as Chesnut v. Capey, supra, conflicts with Armstrong v. Letty, supra, in holding that compliance with the acts of Congress, supra, is a part of execution and attestation to determine admissibility to probate, it is overruled.

Therefore, the later will, being executed in conformity with the laws of Oklahoma, is entitled to probate despite its lack of conformity to the requirements of the acts of Congress, supra.

The second contention of Phillips

arises by virtue of the general law of wills and not because of the acts of Congress, supra, and arises upon a question of the intention of the testator as differentiated from the issue of execution and attestation. This is treated in an annotation in L. R. A. 1916 C, 101, under the head: Revocation as affected by invalidity of some or all of the dispositive provisions of the latter will. See, also, 28 R. C. L. 174, sec. 131, notes 19 and 20. There the general rule is stated:

"If, however, a second will which is inconsistent with a prior will is perfect in form and execution, but incapable of operating as a will on account of some circumstance dehors the instrument, it may nevertheless be set up as a revocation of the first; as, for example, where the second will fails because the devisees are unable to take under it."

Cited are: In re Melville, 245 Pa. St. 318, 91 Atl. 679, and Carpenter v. Miller, 3 W. Va. 174, 100 Am. Dec. 744. It must be noted that there are decisions to the contrary, and those are cited and relied upon by Phillips.

The statement of supposed facts above may be applicable to the facts here. Phillips contends that both wills have the effect of disinheriting the son, the sole heir at law, and that the second will must fail in all of its dispositive provisions dehors the instrument, because it does disinherit the son in favor of other devises but is not acknowledged and approved as required by Congress. Phillips further contends, if the second will is admitted, its only effect will be to revoke the earlier will and result in intestacy—a thing that the law strives to prevent.

In the annotation in L. R. A., supra, it is said:

"As appears in the note to Moore v. Rowlett, ante, 89, a will which is defectively executed does not ordinarily operate as a revocation of a prior will. But if the second will is regularly executed, contains a revocatory clause, and is merely inoperative because of extrinsic circumstances, it does operate as a revocation.

"In the case of such a will, any question as to compliance with statutory requirements is obviated, since these requirements have been met, the instrument being regularly executed. But the question as to the intention of the testator remains. That is, was it the intention of the testator to revoke the prior will in case a provision in the later will fails?

"Except in the case of the failure of the entire dispositive portion of a will, it seems reasonably clear that the later will should operate as a revocation. But where the entire dispositive portion of the later will fails, the precise question of dependent relative revocation would seem to be presented, that is, whether the testator intended to revoke the former will in case the dispositive portion of the later will failed. These principles, however, have not always been kept clear. * * *

"In other of these cases, and in cases not cited above, the intention of the testator is emphasized. If the will is simply revoked in order to make a gift in favor of another person, and it can be seen that there is no intention to revoke unless for that purpose, then it will not be regarded as a revocation where the later gift fails.

"In the absence of a showing that the testator intended the prior will to be revoked only in case the subsequent disposition could take effect, or in case the intention to revoke the will independently of the dispositive portion is apparent, it will be so given effect notwithstanding the new disposition fails."

No testimony was taken in this case, but the evidence, consisting of two wills and other complementary documents and certain stipulations on other matters, is the record. Thus there is an absence of a showing of an intent as spoken of in the first part of the last paragraph above quoted.

We must look to the writings themselves to see whether it is apparent that testator intended to revoke the first will independently of the dispositive clauses.

In the earlier will the estate was devised to a stranger by blood and the son was given only $5. In the body of the will the testator gave a reason therefor: "has assisted me very materially in the

last five years in the way of giving me medicine, supplies and clothes." The devise in the will was a substantial manner of expressing gratitude for material assistance. It evinced a sense of obligation and an intention to repay such kindnesses even though it was necessary to ignore the natural claims upon a father's bounty of a minor child. This was June 12, 1931.

February 20, 1932, a matter of eight months at most, the testator executed a second will wherein he expressly stated his intention of revoking the prior will—the one arising out of his sense of gratitude, and therein he disposed of all of his estate by devises to others and wholly ignored the benefactor he had so warmly commended.

Since there was an express revocation, there is nothing in the rule relating to implied revocations arising only from inconsistent devises in successive wills. See 51 A. L. R. 657, et seq.

It seems to us that the fact testator could desire to revoke the earlier will within a year and utterly ignore the sole devisee therein, in view of the sentiments previously expressed, is evidence of the fact that testator had had a change of mind. If the testator had left Phillips anything by the later will, such a provision would have been some evidence of an intention of a modified feeling of gratitude. But the testator did nothing like that—he cut Phillips off entirely. There is nothing inferable from this that the rule of dependent relative revocation was in testator's mind.

The later will devised testator's estate to his son and to his niece and nephew, and to a friend. These devises to blood relatives is evidence of a change of mind as to them—for the son was given only a nominal sum of money in the earlier will and the niece and nephew were left out altogether. The devise to Roberts, a friend, is evidence that his purpose in the second will was not to favor relatives only. He had at least one friend in mind, and that friend was not Phillips. These devises, inconsistent with the devises in the earlier will, coupled with an express revocation, seem to negative any notion that the earlier will was to be preserved for any purpose.

We cannot see a thing in the record before us that indicates an intention of the testator to preserve testacy in all events. The cases cited by Phillips point out that revocation is not to be judged lightly. The reasoning in those cases is that an express revocation in a subsequent will is to be considered as expressed only with the thought that the subsequent will would preserve testacy. They read into the actions of the testator an intention to remain testate in all events, and they likewise infer that the testator would not expressly revoke the prior will if he entertained any doubt about the sufficiency of the later will. The rule applied by the courts of those jurisdictions indicates a hesitancy to strike down the first will if it can be seen that the second will will be inoperative.

We believe that such a rule is subject to the criticism implied in the quotation from L. R. A., supra, in that it is made an absolute rule of construction rather than a rule by which the intention of the testator is sought from all of the facts.

We do not feel constrained to find any intention on the part of the testator to preserve testacy in favor of Phillips, and especially so since it would require the use of the arbitrary rule. Rather we have favored resort to the record before us for evidence disclosing the intention of the testator. The discussion above will disclose that we find the evidence to indicate the negative rather than the affirmative.

The judgment of the trial court found that the second will was sufficient to revoke the prior will and also that the second will would fail as to its dispositive provisions because of the lack of conformity to the requirements of the act of Congress, supra, and for that reason denied it probate. This finding and order is inconsistent. The judgment of the trial court insofar as it finds and adjudges that the second will revoked the first

will is affirmed, but that part of the judgment attempting to construe the second will and deny it probate is disaffirmed. The county court of Bryan county can construe the will and distribute the estate in accordance with the law applicable at the proper time.

Affirmed in part, disaffirmed in part.

WELCH, V. C. J., and OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur. RILEY, J., dissents. DANNER, J., absent.

On Rehearing.

RILEY, J. (dissenting). The decisive issue in the cause presented is whether the revocation clause contained in the second will, which was nonoperative in all respects as a testamentary disposition of property, served to revoke a prior approved will under which restricted property was devised to one Phillips.

A quarter of a century ago, this court held, in Chesnut v. Capey, 45 Okla. 754, 146 P. 589, as applied to a full-blood Indian's will of the same tribe (Choctaw) "That the will executed August 16, 1913 (The second will unapproved as required by act of Congress) was void, and that the revocatory clause therein of no effect to revoke said will of June 5, 1908, for failure to comply with said act of Congress as amended. * * *"

That rule should govern now. There has been no departure from this rule by this court since its announcement, and there is no departure now in the majority opinion, but simply a failure to follow it. It is true the majority overrule Chesnut v. Capey "* * * insofar as Chesnut v. Capey, supra, conflicts with Armstrong v. Letty, supra, in holding that compliance with the act of Congress, supra, is a part of execution and attestation to determine admissibility to probate. * * *"

This court might well lay out of consideration the whole question of admissibility to probate despite that such an order establishes factum of the will. Courtney v. Daniel, 124 Okla. 46, 253 P. 990; Armstrong v. Letty, 85 Okla. 205, 209 P. 168. This court might well consider that such an Indian's will could be valid under state law and inoperative as to restricted property if unapproved, provided there exists property upon which a devise or bequest can operate. Blundell v. Wallace, 267 U. S. 373, 69 L. Ed. 664. But herein, as recited in paragraph 3 of the syllabus, majority opinion, "the second will failed in all of its dispositive provisions." It devised nothing, it was a nullity, failing wholly to make any testamentary disposition. It was not a will.

Section 1556, O. S. 1931, stripped to the point, provides:

"* * * No written will * * * can be revoked * * * otherwise than: * * * by a written will or other writing of the testator, declaring such revocation * * * and executed with the same formalities, with which a will should be executed by such testator. * * *"

There is no "other writing" of testator involved in this case, and "the revoking with which a will should be executed by clause of a will is part of the will and is to be treated as such, and not as a separate instrument revoking." Re Thompson's Estate (Cal.) 198 P. 795. So the issue is narrowed to the query whether a nullity in the form of a will which fails in all of its dispositive provisions can serve to revoke a former will. Logic and well-considered authorities hold negatively in accord with the rule of property extant in this state for a quarter of a century.

The statement of logic is based upon the proposition of testator's intention. It is this: He made a valid approved will, subsequently he made an ineffective effort toward a different testamentary disposition of restricted property, and coupled with it a conditional revocatory clause evidencing an intention not to die intestate. He wrote, "I * * * desire to make disposition of my property * * * and * * * make the following * * * my last will * * * hereby revoking * * * all other wills. * * *" Can it be said that had the testator known that his last effort at testamentary disposition was in vain he desired the laws of succession to govern in lieu of his prior effective exercise of his testamentary right?

642

The statute and rule of law so long governing in this jurisdiction forbid interposition of the will of a majority of the Justices, under authority applicable only where some of the dispositive provisions of a second will fail. This is shown by the cited case of Moore v. Rowlett, and authority. L. R. A. 1916C, 101:

"Except in case of the failure of the entire dispositive portion of a will, it seems reasonably clear that the later will should operate as a revocation."

The exception is herein applicable. The rule of "dependent relative revocation," under which the majority require affirmative evidence, is wrongly applied. The doctrine reduced simply means that "The revocation is dependent upon the assumption that another * * * will has been made." In re Thompson, 114 Me. 338, L. R. A. 1918A, 911, 96 Atl. 238.

Now, had testator written words in the ineffective will to say "Whether this last will fails in whole or in part I desire to revoke my first will" his intention would be plain, but, in writing as he did, no human agency, from the record presented, can know whether if testator's last expressed testamentary desire had been known to him to be unavailing he would have canceled his former testamentary act and deed. Whereas "revocation of a will consists of two things, intention and action to revoke, neither can be inferred." Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663. On the one hand, animus revocandi is insufficient without an act of cancellation, and such an act of cancellation is unavailing without intention. Cutler v. Cutler, 130 N. C. 1, 40 S. E. 689, 57 L. R. A. 209, 89 Am. St. Rep. 854. Herein intention to revoke is assumed by the majority, but not established by the record. Therefore, having performed the prior act, the first will is preserved until it is overcome, canceled, or revoked in manner prescribed by law, and the burden is not upon proponents of the first and valid will as by the majority placed, but upon those who would destroy its effect.