Kenneth POOL and W.C. Pool, Appellants,

v.

The ESTATE OF Bessie SHELBY, Appellee.

No. 70905.

Supreme Court of Oklahoma.

Dec. 3, 1991.

Justus Hefley, David A. Stephens, Hefley & Stephens, Anadarko, for appellants.

Hyla H. Glover, Miller, Glover & Hall, Oklahoma City, for appellee.

SIMMS, Justice:

Kenneth Pool and W.C. Pool, appellants, are the only living sons of Bessie Shelby, testatrix of the estate which is the appellee herein. Louise Creekmore, Shelby's only daughter and the named executor in Shelby's will, brought this probate proceeding asking the trial court to admit the will into probate. The Pools appeal the trial court's judgment admitting the will arguing that Shelby revoked the will in an affidavit signed after the execution of the will. On review, the Court of Appeals affirmed the trial court's decision that the revocation by affidavit was nullified by Shelby's refiling of the same will in the Grady County Court Clerk's office six months later.

Certiorari was granted to consider the first-impression question of whether the refiling of a revoked will constitutes republication. After further consideration of the matter, however, we have determined that

**362**

the question is not framed for decision because the purported revocation upon which the entire issue rests was legally insufficient as a matter of law.[1] We therefore vacate the opinion of the Court of Appeals and affirm the order of the trial court admitting the will to probate.

The facts presented to the trial court are as follows.

Shelby executed her self-proving Last Will and Testament on November 29, 1979 leaving a majority of her estate to Creekmore who had attended Shelby's needs for many years. At the probate hearing, the witnesses who attested the will testified that Shelby was of sound and disposing mind and did not appear to be acting under duress, menace, undue influence or misrepresentation. Shelby's family physician examined her two months prior to execution of the will and testified that she was mentally competent at that time. The appellants attempted to cast doubt upon Shelby's testamentary capacity, but the trial court found that the will was properly executed and valid.

The appellants then produced an affidavit of revocation purportedly signed by Shelby on May 1, 1980, five months after executing her will. The affidavit read as follows:

"I, Bessie Shelby, 81 years of age, do hereby state and affirm that I have never in my life made a Last Will and Testament. If, however, at any time that I may have unknowingly signed a Last Will and Testament, I hereby expressly declare said Last Will and Testament void."

/S/ Bessie M. Shelby"

The affidavit was witnessed by two individuals and notarized, but contained no attestation clauses.[2] The appellants' sole witness during the contest proceedings regarding the affidavit was the attorney who drafted the affidavit, Patrick Brown. Brown testified that Kenneth Pool contact-

ed him on behalf of Shelby to attempt to regain title to property she had conveyed to Creekmore and an attorney. Brown met with Shelby for the first time on May 1, 1980, and after conferring with her about the property, they discussed her estate. He testified that she stated that she did not have a trust or a will and did not want to have one made for her, but that she would rather have the property divided equally between her children by a judge as Brown had explained would occur if she died without a will. Brown then drafted the affidavit to assure that if a will had been executed it would be revoked, and the property would pass to her heirs by law. However, twelve days after execution of the revocation, Brown persuaded the district court to adjudge Shelby legally incompetent and appoint a legal guardian for her.

To counter the affidavit, Creekmore produced a certified copy of the Grady County Court Clerk's records which listed the probate documents deposited there, including Shelby's will which was filed on December 14, 1979. The records further indicated that on November 26, 1980, Shelby withdrew the will from the court clerk's office and refiled it on the same day. The second filing occurred after Shelby signed the affidavit, and Creekmore asserted that it showed Shelby's intent to revive and republish the will. The transcript reveals that the trial court voiced its doubts as to the affidavit's validity during the proceeding as well as in the journal entry of judgment. Our review of the record indicates that the trial court's observations are well taken.

In regards to the revocation, the trial court found that

"with her having filed the will on November 26, 1980, even if the revocation at the time she made it was valid, the revocation is wiped out by the fact that she took this Will back to the Courthouse and filed the Will again with the Court Clerk, leaving it there presumably to be available at the time she passed away

---

1. The issue of testamentary capacity of Bessie Shelby was not raised by appellants in their briefs nor in their petition for certiorari.

2. Although this document met the requirements of an affidavit as defined in 12 O.S.1981, § 422, it did not comply with the requirements of a nontestamentary document revoking a will under 84 O.S.Supp.1977, § 55(2) and (3).

and her estate had to be probated.... The Court FURTHER FINDS that the testimony of Respondents' only witness, Pat Brown was contradictory and the Court does not believe if we are to accept his testimony, that he could have have [sic] believed in time to have a guardian appointed on May 13, 1980, that she was incompetent and yet could have believed on May 1, 1980, that she was competent enough to make the revocation."

■ Oklahoma has long followed the general rule that a will can be revoked by a testator; but, once made in compliance with and under the formalities of statute, it cannot be revoked in any manner other than provided by statute. *In re Ballards' Estate*, 56 Okl. 149, 155 P. 894 (1916); *In re Cabaniss' Estate*, 191 Okl. 340, 129 P.2d 1003 (1942).

Title 84 O.S.1971, § 101, sets forth the exclusive methods for revoking a written will. In pertinent part, § 101(1) states, as follows:

"By a written will or *other writing of the testator, declaring such revocation* or alteration, and *executed with the same formalities with which a will should be executed by such testator ...*" (Emphasis added)

This Court construed § 101 in *Chesnut v. Capey*, 45 Okla. 754, 146 P. 589 (1915), (then Rev.Laws Okla.1910, § 8358) and held that a full-blood Indian testator properly revoked his will by a non-testamentary document pursuant to the statute where the revocation complied with all the requirements for proper execution of a will in Oklahoma, even though it was not in compliance with a federal statute for wills executed by full-blood Indians. The Court stated:

"When the statute required that instrument to be executed with the same formalities with which a will should be executed, it meant with the same formalities a will was then required to be executed by the statute in force in the state." 146 P. at 592.

■ Therefore, the affidavit in question must have been executed with the same formalities as a will under the statute then governing will execution. *See generally* Annot., *Revocation of Will by Nontestamentary Writing*, 22 A.L.R.3d 1346 (1968). Title 84 O.S.Supp.1977, § 55, the statute applicable at the time the affidavit was signed, enunciates those formalities which must be followed in order for a type-written will to be legally executed. Section 55 provides, in pertinent part, as follows:

"Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:
1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.
2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.
3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.
4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence."

■ On its face, the affidavit fails to comply with the statutory requirements. The affidavit does not contain any language indicating that Shelby signed the affidavit in the presence of the two witnesses or acknowledged that it was her signature on the affidavit as mandated by § 55(2). Nor was evidence or testimony presented to the trial court to show that Shelby acknowledged that the signature was hers. Furthermore, the affidavit does not contain a statement that Shelby declared to the witnesses that the affidavit was a revocation of all previous wills according to the requirement of § 55(3). Nor was there any evidence or testimony before the trial court showing that she declared such to the subscribing witnesses. Further, the record contains nothing to indicate that the witnesses signed the affidavit at Shelby's request and in her presence.

The Pools did not prove that the revocation was valid. Since the revocation was invalid, it had no effect on the validity of the will and the revival and republication arguments are moot. Hence, the will was valid and properly admitted into probate by the trial court.

Appellee Estate has requested counsel's fees for appeal and certiorari-related services, arguing the appeal is "frivolous and wholly without merit." 20 O.S.Supp.1982, § 15.1. Request for attorney fees is denied.

We have examined the whole record and weighed the evidence in this case of equitable cognizance, and we find that the judgment of the trial court is clearly supported by the weight of the evidence. *In re Estate of Bennight,* 503 P.2d 203 (Okla. 1972). Therefore, the judgment of the trial court is AFFIRMED.

OPALA, C.J., and HARGRAVE, KAUGER and SUMMERS, JJ., concur.

HODGES, V.C.J., and LAVENDER and ALMA WILSON, JJ., dissent.

DOOLIN, J., disqualified.

ALMA WILSON, Justice, dissenting:

The majority opinion seriously digresses beyond our established jurisprudence with today's holding that on its face the "purported revocation" fails to comply with the statutory formalities for the execution of a will. Additionally, the trial court's findings of testamentary capacity and intent are against the clear weight of the evidence. Accordingly, I respectfully dissent.

First, the established rule of law in this jurisdiction is that the absence of an attestation clause does not destroy the validity of a will, but only changes the proof required to show that the will was signed and witnessed as required by law.[1] The applicable statutory requirements for the execution of a will are set forth in 84 O.S.Supp. 1977, § 55.[2] Under the substantial compliance doctrine,[3] § 55 imposes only two requirements which must appear on the face of a valid will: 1) It must be subscribed at the end by the testator/testatrix, and 2) It must be subscribed at the end by two witnesses. In addition to these subscriptions, which must appear on the face of the will, § 55 imposes requirements which may be established by evidence other than the will: 1) The testator/testatrix declared to the witnesses that the instrument is his/her will; 2) The testator/testatrix subscribed it in the presence of the witnesses; 3) The testator/testatrix requested the two subscribing witnesses to be witnesses; and, 4)

1. *Ward v. Board of Commissioners of Logan County,* 12 Okla. 267, 70 P. 378, 382, 383 (1902). In *In re Estate of Cutsinger,* 445 P.2d 778, 782 (Okla.1968), this Court said: We are committed to the rule that the attestation "clause" of a will need not be in any particular form, and the entire absence, from it, of such a clause, does not invalidate the will.

2. The pertinent part of § 55 has not been amended since before statehood. The precise language in Section 55 of Title 84, prescribing the requisite formalities of a will, remains the same as was incorporated into the laws of the State of Oklahoma at statehood from the laws of the Territory of Oklahoma:

   ... Every will, other than a nuncupative will, must be in writing; and every will, other than an olographic will and a nuncupative will must be executed and attested as follows:

   First. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

   Second. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

   Third. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

   Fourth. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence.

   The Statutes of Oklahoma, 1893, ch. 86, § 9 (6173), at 1172–1173.

3. In *Hobbs v. Mahoney,* 478 P.2d 956, 958 (Okla. 1970), upon testimony of the witnesses to the will that it was possible that they signed the will out of the presence of the testatrix, this Court said that literal compliance with § 55 is not required and that substantial compliance with § 55 is sufficient. The contested will in *Hobbs* contained an attestation clause which this Court declared to be presumptive proof of the facts stated therein in the absence of any affirmative evidence to the contrary. See, *Estate of Samochee,* 542 P.2d 498 (Okla.1975).

The witnesses subscribed the instrument in the presence of the testator/testatrix.

A will may be revoked by a nontestamentary instrument, if it declares such revocation and it is executed in accordance with § 55. 84 O.S.1981, § 101. And, a self-proved will may be revoked in exactly the same fashion as a will not self-proved. 84 O.S.1981, § 55.[4]

The revocation instrument, Respondent's Exhibit 1, on its face, complies with the requirements of § 55. The revocation instrument declares that Bessie Shelby never made a will but if she did so unknowingly such will is void. The revocation instrument is subscribed at the end by Bessie Shelby and two witnesses.[5] Hence, the validity of the revocation instrument turns on the additional requirements of § 55 which may be established by evidence other than the instrument itself.[6] The trial court did not determine whether the revocation instrument was executed in substantial compliance with the requirements of § 55. The trial court determined that, even if the revocation is valid, it is wiped out by the refiling of the will. The issue presented on appeal from this ruling is whether the refiling of the will of Bessie Shelby constitutes republication.[7]

As the execution and revocation of a will are governed by statute, so too is the republication or revival of a will. Sections 57 and 106 of Title 84 prescribe the methods by which a will may be republished.[8] Pursuant to § 57, republication of a previous will as modified by a codicil is effected by "execution of a codicil referring to a previous will"; and, pursuant to § 106, republication of a previous will is effected where the revocation of a subsequent will shows intent to renew the former will. These statutes encompass the general rules of law relating to republication or revival of testamentary instruments. "Republication" of a testamentary instrument is applicable "where a valid will or codicil is reexecuted or confirmed in such a way as to acquire some force or efficacy which it did not previously possess." 95 C.J.S., § 298, p. 88. "Revival" of a testamentary instrument is applicable "where a testamentary instrument or disposition which has been

---

4. The applicable provisions of 84 O.S.1981, §§ 55 and 101 are the same as the codified versions of those sections governing wills and revocations on May 1, 1980.

5. The revocation instrument states:
STATE OF OKLAHOMA
    SS:
COUNTY OF OKLAHOMA
        AFFIDAVIT OF BESSIE SHELBY
    I, Bessie Shelby, 81 years of age, do hereby state and affirm that I have never in my life made a Last Will and Testament. If, however, at any time that I may have unknowingly signed a Last Will and Testament, I hereby expressly declare said Last Will and Testament void.
        /s/ Bessie M. Shelby
Bessie Shelby
WITNESSES:
/s/ Hazel McKittrick
Hazel McKittrick
1324 S.W. 44th, Okla. City, Okla.
/s/ Bruce Stephenson
Bruce Stephenson
1557 S.W. 44th, Okla. City, Okla.
    Subscribed and sworn to before me this 1st day of May, 1980.
        /s/ Frances L. Brown
Notary Public
My commission expires:
6-20-81
(Seal)

6. On review of the record in its entirety, the majority finds that the contestants of the will failed to present proof of the attestation of the revocation, hence the revocation, as a matter of law, is invalid on its face and it is invalid for lack of necessary proof. The attorney who drafted the affidavit, Patrick Brown, testified regarding its preparation and execution. Even in the absence of proper proof of the statutory formalities of execution of the revocation, the record in its entirety does not support the trial court order admitting the purported will for probate.

7. Neither before the trial court nor on appeal has the proponent of the will attacked the revocation for lack of statutory compliance. Our appellate review is limited to the issues and theories shown by the record to have been actually tendered below. *Frey v. Independence Fire & Casualty Co.,* 698 P.2d 17, 20 (Okla.1985). The record reflects that the proponent of the will challenged the affidavit of revocation on the basis of lack of testamentary capacity and intent and republication of the will.

8. The applicable provisions of these statutes were the same at the time of the refiling of the will herein on November 26, 1980, as in the 1981 codification.

revoked or become invalid is restored or set up by reexecution or by incorporation in a valid testamentary instrument." Refiling of a will for safekeeping by a district court, with nothing more, does not constitute republication. A minimum requirement for republication, like execution or revocation, is that the testator/testatrix and two witnesses subscribe a writing, either a codicil or a revocation. The record in this appeal does not support a legal conclusion that the will of Bessie Shelby was republished or revived.[9]

Secondly, this will contest is a case of equitable cognizance and on appeal it is the duty of this Court to examine the whole record and weigh the evidence and render the judgment that the trial court should have rendered.[10]

The issue raised before the trial court was whether Bessie Shelby had testamentary capacity and intent at the time of making the purported will on November 29, 1979, and at the time of executing the purported revocation on May 1, 1980, and at the time of the purported republication on November 26, 1980. The will contestants alleged that Bessie Shelby lacked testamentary capacity and intent at the time of executing the will because she was unduly influenced by designing people, that is, that Creekmore's testamentary intent was substituted for that of Bessie Shelby.[11]

The trial court entered findings that: 1) at the time the will was made, Bessie Shelby "was of sufficiently sound mind to have testamentary capacity to know who she wanted her estate she had at the time, or any estate that she might come into, to go to"; 2) based on the testimony of the family doctor, "that she was competent during all this time, and with her having filed the Will on November 26, 1980, even if the revocation at the time she made it was valid, the revocation is wiped out by the fact that she took this Will back to the Courthouse and filed the Will again with the Court Clerk, leaving it there certainly presumably to be available at the time she passed away and her estate had to be probated"; and, the testimony of the attorney who drafted the purported revocation, Patrick Brown, is contradictory in that he formed an opinion that Bessie Shelby was competent on May 1, 1980, but that he believed she was incompetent on May 13, 1980, when he initiated the proceeding to have a guardian appointed to conduct her affairs.

Testamentary capacity and intent are questions of fact and the findings of the trial court will be affirmed unless the findings are against the clear weight of the evidence.[12] The rules controlling our examination of the record are established. The rule for determining testamentary capacity is:

A person has testamentary capacity when his mind and memory are such that he knows, in a general way, the character and extent of his property, understands his relationship to the objects of his bounty and to those who ought to be in mind on the occasion of making a will, and comprehends the nature and effect of the testamentary act. *In re Martin's Estate*, 199 Okla. 567, 188 P.2d 862 (1948).

Testamentary capacity is to be determined from all the facts and circumstances, *Id.*, and it may be established by evidence of

9. The only evidence supporting this ruling is a certified copy of a page of the index of recorded wills prepared and maintained by the Court Clerk for Grady County. This index shows that a purported will of Bessie Shelby was filed on December 14, 1979, without any indentity of the person filing the instrument; the index shows the signature of Bessie M. Shelby, dated November 26, 1980, allowing an inference that Bessie Shelby removed the purported will; the index shows the filing of a will of Bessie Shelby on November 26, 1980; but, as the earlier filing, the index does not identify the person filing the will; and, the record is void of any other evidence relating to these filings. This evidence is insufficient to support the trial court's finding of testamentary intent. This evidence is wholly insufficient to support the trial court's conclusion of republication.

10. *In re Estate of Lacy*, 431 P.2d 366 (Okla.1967); *Rose v. Foster*, 288 P.2d 745 (Okla.1955).

11. *Hubbell v. Houston*, 441 P.2d 1010 (Okla. 1967); and, *In the Matter of Estate of Beal*, 769 P.2d 150 (Okla.1989).

12. Id.

events occurring both before and after the execution of the will, as would tend to show the mental condition at the time of the execution.[13]

The clear weight of the evidence in this case supports a finding that Bessie Shelby did not comprehend the nature and effect of the purported testamentary act executed on November 29, 1979. The testimony of Louise Creekmore, proponent of the will, appellee, clearly establishes that Bessie Shelby, at ages 78 years through 81 years, did not comprehend the nature and effect of the myriad of documents, including the propounded will, which she executed during the years from 1977 through 1980. The chronology of events from 1977 through 1980, as gleaned from Creekmore's testimony, clearly establishes that Bessie Shelby's intent was to regain title and ownership of her real property and that her testamentary intent was to have the property divided in such a manner as to prevent trouble among her children upon her death. Bessie Shelby's intent to regain title and ownership of her property was ultimately accomplished in 1981 in the guardian's successful action against Creekmore.

Creekmore's testimony admits that Bessie Shelby was subject to undue influence. She testified that her brothers had unduly influenced her mother causing her to believe that she had conveyed all her property to Creekmore and that her brothers had confused her mother by asking her to sign too many documents. The testimony of Creekmore clearly supports a finding that Bessie Shelby did not understand the nature and effect of the purported will which she executed on November 29, 1979. The clear weight of the evidence supports a finding that Bessie Shelby's testamentary capacity and intent was prevented by the exercise of undue influence of Creekmore and Don Ferguson. No other factual conclusion is supported by the record.

The majority opinion, addressing issues neither presented nor briefed, affirms the order admitting the 1979 last will and testament of Bessie Shelby for probate. With its holding that the revocation is facially invalid as a matter of law, the majority opinion rewrites our decisional law which has been established since before statehood. Pursuant to our established rules of equity, I would hold that the finding of testamentary capacity and intent in the execution of the propounded 1979 last will and testament of Bessie Shelby is against the clear weight of the evidence. Accordingly, I would reverse the order admitting the will for probate and remand this cause for intestate administration.

---

**13.** *In re McCurtain's Estate,* 377 P.2d 210 (Okla. 1962).