In the Matter of the **ESTATE OF** Carroll Gene DeWALD, Jr., Judith Rippee, Appellant,

v.

Maysel WHITTENBURG, Appellee.

No. 87193.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 17, 1996.

Jack De McCarty, Newkirk, for Appellant.

Paul E. Northcutt, Ponca City, for Appellee.

## OPINION

HANSEN, Presiding Judge:

Appellant, Judith Rippee, seeks review of a trial court's order in probate denying admission of the purported last will of Decedent, Carroll Gene DeWald, Jr. Decedent died on September 24, 1995. Judith Rippee, who had been a friend of Decedent's since 1979, claims as sole primary beneficiary. Appellee, Maysel Whittenburg, was the maternal half-sister of Decedent, and is his only heir-at-law under intestate succession.

Decedent formally executed a will in 1982, naming Judith Rippee as primary beneficiary and executrix. Maysel Whittenburg was included as a secondary beneficiary, along with five aunts and an uncle. In July 1986, Decedent executed a new will, with Judith Rippee remaining as primary beneficiary. In the revised will, Maysel Whittenburg· and the other family members were removed as secondary beneficiaries, and Judith Rippee's husband and children were substituted. Decedent wrote in the desired changes on the 1982 will, and after the 1986 will was executed, he marked the earlier will void and tore it in two.

In· December 1986, Judith Rippee suffered a stroke that left her partially paralyzed. It appears the nature of her relationship with Decedent changed at that time, although the evidence as to the relationship was conflict-·ing. In any event, in 1989 Decedent began to discuss changing his will with Michael Vinyard, a friend. However, no change was made at that time. In May 1995, Decedent moved to Oklahoma from his long time home in Wichita, Kansas.

In July 1995, Decedent asked Michael Vinyard to help him change his 1986 will. Vinyard's testimony was that because Decedent had forgotten his reading glasses, Decedent asked Vinyard to read the will and Decedent told him what changes he wanted to make. Vinyard lined out and interlineated as Decedent directed. Vinyard was substituted for Judith Rippee as primary beneficiary and executor. Vinyard's wife was substituted as secondary beneficiary for Rippee's family. Michael Vinyard further testified Decedent said he intended to take the interlineated 1986 will to an attorney to have a new will made. However, there is no evidence he did so.

The 1986 will, as marked by Michael Vinyard, was in Decedent's possession at the time of his death. Michael Vinyard presented this will for probate. Judith Rippee filed a petition to contest the will. Maysel Whittenburg also filed a petition contesting the will, and later filed a petition for letters of administration alleging Decedent had revoked his will and died intestate. Subsequently, Michael Vinyard dismissed his petition for probate of the will.

After a trial at which considerable testimony was taken from the parties and supporting witnesses, the trial court found [1] Decedent had died intestate [2] Maysel· Whittenburg was Decedent's sole heir-at-law, and [3] Maysel Whittenburg should be issued letters of administration. The trial court made several specific findings of fact, among which were that Decedent had revoked his 1986 will by obliteration and that 84 O.S.1991 § 101(2) was controlling in its determination.

Judith Rippee brings this appeal from the trial court's order holding Decedent died intestate. In reviewing a will contest, which

is of equitable cognizance, we will weigh the evidence, but will not disturb the trial court's judgment unless it is clearly against the weight of the evidence. *Matter of Estate of Ausley,* 818 P.2d 1226 (Okla.1991).

■ Appellant first alleges the trial court erred in finding interlineation of the will constituted revocation. Once a will is made in compliance with statutory formalities, it cannot be revoked other than provided by statute. *Ausley,* at 1229. The will here, as executed by Decedent on July 31, 1986, complies with the requisite formalities of 84 O.S. 1991 § 55. The trial court found Decedent revoked that will in accordance with 84 O.S. 1991 § 101(2), which provides:

> Except in the cases in this article mentioned no written will, nor any part thereof, can be revoked or altered otherwise than:
>
> (2) By being burnt, torn, canceled, obliterated or destroyed, with intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction.

■ The trial court found Decedent's will had been obliterated by the lining out and interlineations done by Michael Vinyard at Decedent's direction and in Decedent's presence. For a valid revocation, there must be a physical act within the meaning of the statute, *and* "the act must be performed *animus revocandi,* i.e. with intent and purpose to revoke". *Ausley,* at 1229.

■ In *Ausley,* the Supreme Court held obliteration or cancellation, as those terms are use in § 101(2), did not require total erasure or blotting out of the words of the will. In that case the original of the will had been marked with the handwritten word "void" on each page, the testator's signature had been lined through, and a large X had been drawn over all the signatures on the self-proving clause page. In the will now before us, Judith Rippee's name is lined out each place it appears, as is the name of her family as secondary beneficiaries, and the names of Michael Vinyard and his wife are written in above the line outs. Additionally, executrix is lined out each place it appears and executor is written in. Other than the

foregoing markings and words, the will remains substantially intact.

■ However, the physical acts must be considered in the context of the Decedent's intent in causing those acts to be done. *Ausley,* at 1229. The record reveals Decedent visited Michael Vinyard, a close friend, for help with changing the will. Michael Vinyard testified Decedent told him at that time that he wanted to get Judith Rippee off his will because he did not want her, or "the worthless son-of-bitch she was married to" to receive anything. Michael Vinyard related Decedent told him the reason he did not want Judith Rippee to receive anything was that "[h]e felt that Judy had used him and that they no longer had a relationship and he didn't care about her". There was similar testimony from LaVerna Vinyard, Michael's wife, and Linda Kirk, both of whom were present at the time Decedent was directing Michael Vinyard to make the changes to the will.

Appellant testified Decedent stopped by her house in Augusta, Kansas, in the second week of July 1995. At that time Decedent said nothing to her about being angry with her or that they were no longer friends, nor did Decedent say anything about changing his will. She further testified Decedent gave her his address in Oklahoma. Appellant offered nothing concerning Decedent's stated intentions as to why he wanted to change his will, but argues Decedent's actions speak louder than his words. Appellant claims Decedent, having done so in the past, was aware of how to revoke a will, that is, by drawing large X's on it, writing "void" on it and tearing it in two. She also notes that in September 1995, Michael Vinyard saw the changed will in Decedent's possession and it had not been further changed.

While we must review and weigh the evidence, we may not simply substitute our view of the evidence for that of the trial court. Under the standard set forth in *Ausley,* we may reverse only if the trial court's judgment is clearly against the weight of that evidence. We do not find the trial court's judgment to be clearly against the weight of the evidence as set forth above. There is no indication the Supreme Court intended to set the obli-

terative actions in *Ausley* as a minimum standard.

Under the *Ausley* two part rule for determining a valid revocation, the physical acts done to the will in each case must be considered in view of the established intent of the testator. Here, Decedent expressed his desire that Appellant receive nothing under his will and directed Michael Vinyard to strike Appellant's name from all dispositive portions of the will. The evidence sufficiently supports the trial court's conclusion that Decedent no longer wished his will to have effect and revoked his will by lining out all substantive provisions.

 Appellant also contends the trial court erred in refusing to apply the common law doctrine of "dependent relative revocation", as that doctrine is codified in 84 O.S. 1991 § 103. Section 103 provides:

> A revocation by obliteration on the face of the will may be partial or total, and is complete if the material part is so obliterated as to show an intention to revoke; *but where, in order to effect a new disposition the testator attempts to revoke a provision of the will by altering or obliterating it on the face thereof, such revocation is not valid unless the new disposition is legally effected.* (Emphasis added).

As the Oklahoma Supreme Court pointed out in *Ausley*, the second part of § 103 applies only where there is an attempted revocation of a provision of a will, not where the entire will is intended to be revoked. Therefore, § 103 is not applicable here because the revocation effectively was of the entire will. The common law doctrine of dependent relative revocation has, however, been applied where the entire will was intended to be revoked. *Ausley*, at 1232. Therefore, we must nonetheless consider if that doctrine is applicable.

In *Ausley*, at 1232, the Supreme Court quoted the following explanation of the doctrine of dependent relative revocation from THOMPSON ON WILLS 262, § 168 (3rd ed. 1947):

> Under what has been termed the doctrine of "dependent relative revocation," if a tes-

tator, having made a will and desiring to make a new one, cancels the first will preparatory to making the second and thereafter fails lawfully to execute the same or make therein an invalid disposition of property, it will be presumed that he preferred the old will to an intestacy, and the old will is not revoked.

.      .      .      .      .

The *Ausley* Court noted it had earlier recognized the doctrine in *Phillips v. Smith*, 186 Okla. 636, 100 P.2d 249 (1939), but had rejected its application because it found sufficient evidence to rebut the presumption that the testator would have desired the first will preserved in the event the second failed in all its dispositive provisions. The *Ausley* Court affirmed the trial court's decision not to apply the doctrine for the same reason.

 Whether a will revocation should be negated under the doctrine is a question of fact, and if the doctrine is so applied, it will not be done arbitrarily, but only after a review of the record to determine the intention of the testator. *Ausley*, at 1233. In fact, although the doctrine has been *recognized* in this jurisdiction, we can find no case here in which it has been *applied* to negate a revocation.

As in *Ausley*, the evidence as to the probable intent of Decedent regarding whether the revocation was intended to be complete and absolute is conflicting, but the decision of the trial court to reject application of the doctrine cannot be said to be clearly against the weight of the evidence. There is substantial evidence to rebut any presumption that Decedent would rather have had Appellant receive his entire estate than have the estate distributed under our laws of intestacy.

The trial court's judgment is AFFIRMED.

JOPLIN and BUETTNER, JJ., concur.