## Emernecker's Estate.

*Will—Destruction of will—Cutting off children.*

Where a woman executes a will in favor of a granddaughter, but subsequently destroys the paper as the result of groundless apprehension on her part that it would not be effectual unless it contained some provision in favor of her children, and at the same time declares her intention to make a similar will with a gift to her children of $1.00 each, but she died before such a will is made, a copy of the will destroyed cannot be probated.

Argued March 29, 1907.   Appeal, No. 104, Jan. T., 1907, by Ella Aaron, from decree of O. C. Phila. Co., Oct. T., 1905, No. 495, dismissing appeal from register of wills in Estate of Catherine Emernecker, deceased.   Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ.   Affirmed.

Appeal from register of wills.

PENROSE, J., filed an opinion in part as follows :

The petition for appeal avers that the decedent died May 13, 1905 ; that on July 16, 1903, she executed a will giving all her estate, real and personal, to her granddaughter, the petitioner, who, from the time she was thirteen years old, had lived with and given to her her wages and had aided in supporting her ; that the decedent had often declared her intention to leave the whole of her estate to the petitioner because the money of the latter had gone into it ; that the decedent was a "person of little education and very susceptible to the influence of her friends and neighbors and those with whom she constantly associated, and was so anxious to have her estate go to the peti-

tioner that she constantly discussed her will" after it had been so executed, with them; that "divers of them believed the said will to be invalid and so stated to" her "because no provision was made therein for the devise or bequest to her children of at least the sum of one dollar each"; "that shortly before her . . . . death a friend and neighbor declared said will . . . . to be invalid because it did not so provide"; that "influenced by such statement" and her own belief to the same effect, she destroyed the will, "declaring at the same time her intention to have another will drawn precisely of the same tenor as the said will . . . . adding thereto a clause leaving one dollar to each of her children, under the belief that her will would otherwise be of no validity and with no intention of revoking the gift of her estate to the petitioner."

It also avers that the decedent left children, Leopold Hutz, Wilhelmina Sherman, and Caroline Ellis, and grandchildren, William Albright, Caroline Mitchell, Mary Howells, and Ella Aaron, formerly Albright, the petitioner, of whom Caroline Ellis and Caroline Mitchell desire that a copy of the will so destroyed should be admitted to probate—the application being also joined in by George P. J. Braun, the executor named therein.   But that the register refused probate of the copy.

The facts are, substantially, as averred in the petition.   The testamentary capacity of the decedent was admitted, and it was also admitted that the will was duly executed, and that the copy offered was a true and perfect copy.

When the will was drawn, the testatrix, an elderly German woman, was under the impression that the provision in favor of her granddaughter to the exclusion of her children and other grandchildren, would be invalid unless she gave a nominal amount, at least, to each of those so excluded; but upon the assurance of Mr. Braun, by whom it was drawn, that this was unnecessary, she executed it in the presence of two witnesses.

Notwithstanding this she appears to have been uneasy on the subject, and, in April, 1905, about three weeks before her death, she had a conversation with Mrs. Scheidt, an old friend, who told her that the will was not good because of the omission of gifts to her children of at least $1.00.

A week or ten days later, in a conversation with another

friend, Mrs. Bolst, she spoke of her will with reference to what Mrs. Scheidt had said to her on the subject, and declared that she would "make another will so that nobody will be able to take anything from the property what she knows she wished to will to Ellie." She then, in the presence of Mrs. Bolst, tore the will up and threw the pieces into the fire, saying to her that "on the first fine day" they (the decedent and Mrs. Bolst, who also wanted to have her own will drawn) would go to "Ladner, to Eighth and Green," to have him "draw a new will," in which she would give to each of her children $1.00, "and for Ellie everything she had in her possession because she was working for her."

At this time the decedent appeared to be in perfect health, but when, about a week later, on Friday morning, Mrs. Bolst called to go with her to Mr. Ladner's, she found that she had been taken sick the previous night. She died the next day.

*Henry C. Terry*, for appellant.

*J. Howard Morrison*, with him *Samuel Nides*, for appellee.

PER CURIAM, May 20, 1907:

This case affords an illustration that may almost be called pathetic, of the persistency of popular error. The notion that to disinherit the heir he must be "cut off with a shilling" (for the probable origin of which see Newlin's Estate, 209 Pa. 456), started more than 300 years ago, never was the law either in England or Pennsylvania, and yet survives with such potency as to lead to results apparently as unjust as they were unintended.

The undisputed facts of this case do not admit of any question as to the legal result, however much we may be impressed that the testatrix's act was induced by an erroneous belief as to the law. She intentionally destroyed the will, and declared she had done so with intent to make another. She knew what she was doing and the effect of it, and she did it animo revocandi, with intent to produce that effect. Her reasons were not matter of inquiry for the court. Whether, if she had felt sure that the will already executed would accomplish what she wanted to do she would have changed it, we may specu-

late but we do not know. As was well said by the learned judge below, " She was aware that, until this new will was executed, she was without any will at all, and the time of execution was left indefinite. Her friend was to call the " first fine day " to go with her to have it drawn. This was merely the expression of an unwritten intention to do something in the future, and no matter how fully her mind was then made up, there might be a change of intention at any time before it was permanently expressed in writing. And whether the intended provision for her children would be substantial or merely nominal cannot be known. A will giving even a dollar to each child would be a different will from the one destroyed, and the dollar so given could be demanded by the legatees."

It seems to be a hard case, but there is no remedy without making the bad law which such cases are said to invite.

Decree affirmed.