## *In re* BALLARD'S ESTATE.

No. 6510.    Opinion Filed February 29, 1916.

(155 Pac. 894.)

1.  **WILLS—Execution—Proof.** The facts examined in the opinion, and held sufficient to establish the due execution of the will.

2.  **SAME—Revocation—Interlineation.** A will, executed in the manner and with the formality required by law, can only be revoked in the manner pointed out by statute. The mere interlineation of a line in the body of the will by the testator, after its execution, which neither adds to nor takes from the meaning of the will, and which in no wise indicates an intention to revoke the will, does not operate as a revocation thereof.

(Syllabus by Brewer, C.)

*Error from District Court, Craig County;*
*Preston S. Davis, Judge.*

Proceedings on the probate of the will of James F. Ballard, deceased, wherein Jessie M. Ballard was petitioner and Henry Ballard contestant. From judgment of the district court on appeal, admitting the will to probate, contestant brings error. Affirmed.

*Rushing & Gust* and *W. P. Thompson*, for contestant, Henry Ballard.

*W. H. Kornegay*, for petitioner, Jessie M. Ballard.

Opinion by BREWER, C.   This proceeding in error is brought to have reviewed a judgment of the district court on appeal, admitting to probate the will of James F. Ballard.   The attacks made in that court and here relate (1) to the execution of the will, and (2) to the claim of revocation by an obliteration through the medium of an interlineation in the body of the will, and on the bottom of the will below the signatures thereto.   The will is short, and is as follows:

"Know all men by these presents: That I, the under-signed, James F. Ballard, now in good health, and of sound mind and memory, and mindful of the uncertainty of life, do hereby will as follows:

"I.   It is my pleasure, will and direction that all of my just debts be paid.

"II.   I hereby give and bequeath to my son, Henry T. Ballard, the sum of one hundred ($100.00) dollars.

"III.   I hereby give, bequeath and devise to my divorced wife, Jessie M. Ballard, all of my property, both real and personal [This includes all insurance policies which are or may be upon my life, J. F. Ballard], remaining after the payment of debts and the $100.00 to my son, Henry, aforesaid.

"IV.   I hereby name Mrs. Jessie M. Ballard, of Big Cabin, Oklahoma, executor of this my last will and testament.   The above and foregoing I hereby declare to be my last will and testament, and have called E. J. McBride, of Big Cabin, Oklahoma, and John Stuidle, of Big Cabin, Oklahoma, as witnesses hereto, and to whom I have declared the same to be my last will and testament.

"In witness whereof, I have hereunto set my hand this the 14th day of June, 1911.

"[Signed]                    JAMES F. BALLARD.

"We, E. J. McBride, of Big Cabin, Oklahoma, and John Stuidle, of Big Cabin, Oklahoma, have been by James F. Ballard, the above-named testator, called to witness the above and foregoing will, and we do and each of us does hereby certify that the said James F. Ballard signed said will in our presence, and in the presence of each of us, and to us and to each of us he declared the same to be his last will and testament, and in his presence, and in the presence of each other, and at his request, we have hereunto set our hands as said witnesses, at

Big Cabin, in Craig county, Oklahoma, the day and year last above written.

"[Signed]                    E. J. McBRIDE,
                             "JOHN STUIDLE.

"(This will also includes all insurance policies which are or may be upon my life.
"[Signed]              JAMES F. BALLARD.)"

The will was prepared in typewriting, with blank places left to fill in the names and residences of the witnesses; and the line in item III of the will, shown above in brackets, had been written in with a pen. Below the signature of the witnesses and of the testator, at the bottom of the last page, appears the following: "This will also includes all insurance policies which are or may be upon my life. James F. Ballard."

There is no claim made, and no evidence to support it if it were made, that the testator was other than in his right mind, and was free from duress, menace, and fraud at the time of the execution of the will. Nor is there any dispute as to his signing the will, nor as to the two witnesses signing the same as appears upon the face thereof.

1. The claim that the will was not properly executed—that is to say, executed in substantial compliance with the statutes relating thereto—it seems to us, rests upon rather flimsy grounds, and is based upon the fact that the two attesting witnesses were not in complete harmony as to just what was said and done, and were doubtful in their recollections of just what testator said in regard to its being his will, and as to his signing the same in the presence of the witnesses, or acknowledging the same to be his will to them. These witnesses were examined, cross-examined, and re-examined at great length, and we shall not set out in detail their testimony,

but it is fairly proven, with no substantial conflict, that the testator, who lived near Big Cabin, Okla., went to the county seat and consulted an attorney, and gave him minute and particular directions as to the disposition he desired to make of his property, and had him put the same into the form of a typewritten will, places being left blank for his signature, and for that of the attesting witnesses; that he either took this will with him, or had it sent him by mail to Big Cabin, where he was employed in a store; that he there asked one of the subscribing witnesses, Mr. McBride, to fill out the blanks in the attestation clause, stating that the instrument was his will, and that he wanted McBride and his other fellow employee, Stuidle, to be witnesses to his will; that the blanks were so filled, and the testator signed his name to the will, and witness McBride signed as a witness; that at a later time, probably next day, the other attesting witness was called into the office of the store, Mr. Ballard having the will in his hand, and asked to sign the same as a witness; that testator told him what it was, that he wanted him to sign it, and said to him, "I have got a will here I want you to sign," and said witness Stuidle said, "All right"; that testator then showed him where to sign; that he did so.

It seems to us that it cannot be doubted but that, under the testimony, independent of the attestation and publication clause embodied in the will, this was a sufficient acknowledgment by the testator of his signature and publication of the will. We all know how faulty memory is as to the full details of a transaction, and of the words spoken at the time of it, and especially in a matter where a person is merely a witness to a document, and has no special concern about it; and in view of this, it seems to be a very general rule that:

"A full attestation clause reciting compliance with all formalities of execution and signed by the witnesses is *prima facie* evidence of the validity of the will, although the witness' memory is faulty, or he contradicts the facts stated in the clause."    (40 Cyc. 1304.)

See, also, *O'Hagan's Will*, 73 Wis. 78, 40 N. W. 649, 9 Am. St. Rep. 763; *Hennes v. Huston*, 81 Minn. 30, 83 N. W. 439; *In re Tyler*, 121 Cal. 405, 53 Pac. 928; *Carey v. Price*, 56 Colo. 77, 136 Pac. 1175, 51 L. R. A. (N. S.) 927, Ann. Cas. 1915B, 951; *In re Bernsee's Estate*, 141 N. Y. 389, 96 N. E. 314; *In re Miller's Estate*, 37 Mont. 545, 97 Pac. 935.

In *Hennes v. Huston, supra,* it is said:

"The apparent order in which the signatures to the will were affixed—first by the testatrix, followed by an acknowledgment, then by the witnesses—authorizes the reasonable inference which the trial court adopted, namely, that the formalities of the statute had been complied with."

In *Re Taylor's Estate, supra,* we find the following language:

"The court held that as one attesting witness was dead and the other unable to recollect, as above stated, and as there was no evidence tending in any way to invalidate the will, proof of the signatures of the testatrix and the attesting witnesses was, under the circumstances described, sufficient to establish the due execution of the instrument.    We see no valid reason for disturbing this conclusion."

In the case from which the above quotation is taken, the witness was unable to recollect whether the testator signed the instrument or acknowledged his signature in his presence, or whether he declared it to be his will in the presence of the attesting witnesses, or whether tes-

tator requested him to sign as a witness. To support that case, a number of authorities are cited in support of the rule that ordinarily, when the signature of the testator and of the subscribing witnesses have once been established by competent testimony, in the absence of positive proof to the contrary, it will be presumed that all the formalities required by the statute have been complied with. Appended to *Carey v. Price,* as reported in 51 L. R. A. (N. S.) 927, is an extensive note, citing numerous authorities, including the courts of New York and New Jersey, to the effect that when an attesting clause is attached to a will, is in due form, and states all the necessary essentials—a valid execution under the statute—such statements are *prima facie* evidence of the truth thereof, and will be sufficient to sustain the execution of the will, unless overcome by positive testimony to the contrary, and even when the witnesses appear and are unable to remember many of the essential facts relative to the execution.

In the case of *In re Miller's Estate, supra,* the court quotes with approval from 30 Am. & Eng. Encyc. Law (2d Ed.) 588, the following:

"Publication may be established by the testimony of one attesting witness in opposition to the other, the presumption being in its favor; and the failure of the witnesses to remember whether publication was made or not will not defeat the will when the attestation clause recites the fact."

It may be further said that the statutes do not prescribe the rules of evidence for the establishment of the proper execution of a will and obtaining the signatures of witnesses thereto by the testator. It seems to be immaterial how the request is conveyed to the witnesses that they are desired as witnesses, just so it appears that they

did become such at the instance and through the desire of the testator, fairly and intelligently exercised by him. The fact that witnesses are desired as such may be implied from the acts and conduct of the testator, together with the surrounding circumstances. 40 Cyc. 1115; *In re Cullberg's Estate,* 169 Cal. 365, 146 Pac. 888; *In re Silva's Estate,* 169 Cal. 116, 145 Pac. 1015; *In re Miller's Estate, supra.*

In *Re Silva's Estate, supra,* the court approved the following instruction:

"The court instructs you that it is not necessary that a testator should in words say that an instrument is his will or request the subscribing witnesses thereto to witness the same as such. Such statement and request on the part of the testator may be indicated by his manner, conduct, and demeanor."

And the court, in sustaining the will, says:

"It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions, although there is no declaration in words to that effect. * * * The law does not require that all the witnesses shall testify without conflict concerning the execution of the will, nor that at the time of the probate both of the subscribing witnesses shall testify to all the facts necessary to constitute a statutory execution thereof."

In *Re Miller's Estate, supra,* it is said:

"It is not essential that the testator should expressly ask the subscribing witnesses to sign or expressly declare the instrument to be his will. All the attending facts and circumstances should be considered in order to determine

whether the statute has been substantially complied with so as to carry out the intent with which it was adopted. * * * No particular form of request is necessary, and it may be implied from acts. Anything which conveys to the witnesses the idea that they are desired to be witnesses is a good request."

We think, from the above authorities, that the will was executed in substantial compliance with the statutes of this state.

2. It remains to be seen what effect, if any, the interlineation made in this will by the testator himself, after its execution, had upon it. As has been shown, testator wrote in ink in item III of the will the following clause:

"This includes all insurance policies which are or may be upon my life. James F. Ballard."

Item III, before this was written in, was as follows:

"I hereby give, bequeath, and devise to my divorced wife, Jessie M. Ballard, all of my property, both real and personal, remaining after the payment of debts and the $100.00 to my son Henry aforesaid."

The claim is made that this interlineation operated as a revocation of the will, by changing, after its execution, its term. Of course a will can be revoked by the testator; but, once made in compliance with and under the formalities of the statute, it cannot be revoked in any manner other than pointed out by statute. The material statutes involved here are sections 8358 and 8360, Rev. Laws 1910, which read:

"8358. Except in the cases in this article mentioned no written will, nor any part thereof, can be revoked or altered otherwise than: First, by a written will or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with

which a will should be executed by such testator; or, second, by being burnt, torn, canceled, obliterated or destroyed, with intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction."

"8360.   A revocation by obliteration on the face of the will may be partial or total, and is complete if the material part is so obliterated as to show an intention to revoke; but where, in order to effect a new disposition, the testator attempts to revoke a provision of the will by altering or obliterating it on the face thereof, such revocation is not valid unless the new disposition is legally effected."

Of course it is not claimed that this will was revoked by another will, or writing of the testator, declaring such to be his intention, under the first subdivision of section 8358, *supra;* nor is it contended, nor can it be, that it was burned, torn, canceled, obliterated, or destroyed with the intention of revoking same, under the second subdivision. Nor can we see how it could be contended successfully that it was revoked under section 8360, *supra,* by obliteration on the face of it, partial or total.   The truth of the matter is, this interlineation neither adds to nor takes from the meaning of the will.   Item III, before the interlineation was made, provided for the disposition of all the testator's property, "both real and personal," after paying debts and a certain particular devise.   If the insurance on his life was subject to devise by him at all as the property of his estate, it would have gone to the devisee named, without the interlineation, being personal property of his estate. The truth of the matter is, as is made clearly manifest by the record, this testator, instead of desiring to revoke his will, was overanxious that it be made to plainly appear that this insurance was intended to be covered in the gen-

In re Ballard's Estate.

eral devise of all his property. In other words, in his solicitude that the party named should get all the residue of his estate, after the payment of debts and a certain devise, he wrote this interlineation into the will, needlessly and uselessly, and without any effect, save that it has occasioned this controversy and this appeal. We shall not burden this opinion with quotations from the very many authorities which deal with the revocation of wills by obliteration, erasures, and otherwise, but will call attention to those who wish to go at length into the matter to 18 pages of notes, in which the authorities are collected and appended to the case of *Graham v. Burch*, 28 Am. St. Rep. 344.

The will was properly executed, by a man whose capacity is unchallenged, and who, at the time, was free from duress, menace, or fraud, and the interlineation shows not the slightest intention to revoke the will; and therefore the court correctly pronounced the law and admitted it to probate. This cause should therefore be in all things affirmed.

By the Court: It is so ordered.