IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 14221

IN THE MATTER OF THE ESTATE OF

ELLA D. PATTEN, Deceased.

ORDER



PER CURIAM:

The above opinion, decided December 27, 1978 is amended:

On page 6, line 6 from the top of the page, the name "Donald" should be changed to "Robert L.".

This amendment is made nunc pro tunc to correctly reflect what was decided by the Court on that date in this opinion.

DATED this 7th day of February, 1979.

_____
Chief Justice

_____

_____

_____
Justices

No. 14221

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN THE MATTER OF THE ESTATE OF
ELLA D. PATTEN, Deceased.

---

Appeal from: District Court of the Ninth Judicial District,
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Church, Harris, Johnson and Williams, Great Falls, Montana
R. Keith Strong argued, Great Falls, Montana

For Respondent:

Alexander, Kuenning, Miller and Ugrin, Great Falls, Montana
Edward Alexander argued, Great Falls, Montana

---

Submitted: November 17, 1978

Decided: DEC 2 7 1978

Filed: DEC 27 1978

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from the granting of summary judgment by the District Court, Pondera County, denying admission to probate of a copy of the purported Last Will and Testament of Ella D. Patten, deceased.

Ella D. Patten died September 14, 1973. Her heirs are her two sons: Donald Patten, proponent and appellant, and Robert Patten, contestant and respondent.

The parties to this proceeding were previously before this Court litigating the validity of another alleged will of Ella D. Patten. Patten v. Patten (1976), 171 Mont. 399, 558 P.2d 659, 33 St.Rep. 1328. We held then that an alleged will of the deceased, made in 1970, could not be admitted to probate because it was not properly executed.

The copy of the will before us now was executed on November 25, 1968. The validity of the execution of this will is not in dispute. When the will was executed, the original was given to Ella D. Patten and a copy was retained by the attorneys who drew the will. At decedent's death, the original could not be found. The copy was presented for probate.

Both wills left the bulk of decedent's estate, approximately $200,000, to Donald Patten. There are some differences between the wills. In the 1968 will, Robert Patten was named executor of the estate. In the 1970 will, this appointment was deleted. The 1970 will omits some specific bequests which were in the 1968 will. The remaining paragraphs in the wills are almost identical in language and in form.

After our decision in Patten v. Patten, supra, Robert Patten petitioned the District Court for a determination that decedent died intestate. In response to this petition, Donald Patten requested the court to admit a copy of the 1968 will to probate. Discovery then was commenced by both sides. On the

basis of this discovery, Robert Patten moved the court for summary judgment on the grounds that the copy of the 1968 will was not entitled to probate. Following a hearing on this motion, the District Court, on January 4, 1978, entered an order and judgment granting Robert Patten's motion. Donald Patten appeals from this order and judgment.

On appeal, appellant raises these issues:

1. Does Montana law recognize the doctrine of dependent relative revocation, and, if so, is it applicable in this case?

2. Does the Montana Uniform Probate Code, Sections 91A-1-101, et seq., R.C.M. 1947, apply in this case where the decedent died prior to the effective date of the Code?

3. When the doctrine of dependent relative revocation is applied, what is the procedure and proof necessary to allow probate of a lost or destroyed will?

The principal issue in this appeal is the District Court's refusal to apply the doctrine of dependent relative revocation and admit the copy of the 1968 will to probate. This is a case of first impression in Montana. We have not previously determined if the doctrine of dependent relative revocation is a part of Montana law. The doctrine has never been applied in this jurisdiction.

The doctrine of dependent relative revocation comes from the common law. The doctrine has been outlined in this manner:

> "Under what has been termed the doctrine of 'dependent relative revocation,' if a testator, having made a will and desiring to make a new one, cancels the first will preparatory to making the second and thereafter fails lawfully to execute the same or make therein an invalid disposition of his property, it will be presumed that he preferred the old will to an intestacy, and the old will is not revoked. The doctrine is said to be one of presumed intention, it being presumed that cancelation or destruction of the old will was intended to be dependent upon making of a new one as a substitute for the old one. If the cancelation of the old will and the making of the new one were

were parts of one scheme, and the revocation
of the old will was so related to the making
of the new as to be dependent upon it, then if
the new will be not made, or if made is invalid
for any reason, the old will, though canceled,
should be given effect, if its contents can be
ascertained in any legal manner." Thompson on
Wills §168, p. 262.

The doctrine is applied with caution. The mere fact that a testator made a new will, which failed of effect, will not of itself prevent the destruction of an earlier will from operating as a revocation. The doctrine can only apply where there is a clear intent of the testator that the revocation of the old is conditional upon the validity of the new will. 95 C.J.S. Wills §267, p. 37. For the doctrine to apply, the new will must also not have changed the testamentary purpose of the old will and essentially repeated the same dispositive plans such that it is clear that the first will is revoked only because the second duplicated its purpose. 95 C.J.S. Wills §267, p. 37. Thus, while the doctrine may be widely recognized, it is narrowly applied.

We hold that the doctrine of dependent relative revocation can be applied under Montana law. We have found no statutes or court decisions either prior to or subsequent to the enactment of the Montana Uniform Probate Code precluding the application of this doctrine in this jurisdiction. However, while holding that the doctrine can be applied under our law, we decline to apply the doctrine in this case.

In deciding whether to apply the doctrine in a given case, the testator's "intent" is the controlling factor. The testator must intend that the destruction of the old will is dependent upon the validity of the new will. Thompson on Wills, supra. Evidence of this intent cannot be left to speculation, supposition, conjecture or possibility. The condition that revocation of a will is based upon the validity of the new will must be proved by substantial evidence of probative value. Roberts v. Fisher (1952), 230 Ind. 667, 105 N.E.2d 595. A showing of immediate intent to

make a new will and of conditional destruction are required to re-establish a destroyed will under the theory of dependent relative revocation. In re Estate of Hall (1972), 7 Wash.App. 341, 499 P.2d 912. In Hall, the court stated that to prove this intent the proponents of the revoked will must show that the new will was executed concurrently with or shortly after the destruction of the old will and both wills must be similar in content. In the present case, Donald Patten, the proponent of the copy of the 1968 will, has not proven that decedent intended the destruction of the 1968 will to depend upon the validity of the 1970 will.

The original of the 1968 will was given to Ella D. Patten after it was executed. At her death, it could not be found. Under Montana law, a will, last seen in the possession of a testator, which cannot be found after a careful and exhaustive search following death is presumed to have been destroyed by the testator with the intent of revoking it. Matter of Estate of Hartman (1977), ____Mont.____, 563 P.2d 569, 33 St.Rep. 285; In re Estate of Una M. Newman (1974), 164 Mont. 15, 518 P.2d 800; In re Colbert's Estate (1904), 31 Mont. 461, 78 P. 971. This presumption that decedent destroyed the 1968 will with the intent to revoke it must apply in this case. No one knows when the decedent destroyed her will or how she did it. The record does not show that the 1970 will was executed concurrently or shortly after the destruction of the 1968 will.

While the content of both wills is similar in some respects, the dissimilarities are such that they reveal decedent's revocation of the 1968 will was not conditioned on the validity of the 1970 will. In the 1968 will, decedent bequeathed $5,000 and $2,500 to her grandchildren, the son and daughter of Robert Patten. In the 1970 will, Donald Patten's name was written in by pen and ink as executor. In the 1968 will, Robert Patten was the named

- 5 -

executor.  These differences in the wills show that decedent may not have intended the same dispositive plan.

Here, the evidence that decedent intended the revocation of the 1968 will to depend upon the validity of the 1970 will is merely conjecture and speculation.  As that is the case, the District Court was correct in granting summary judgment to Donald Patten.  The doctrine of dependent relative revocation can only be applied where the evidence of the testator's intent is clear and convincing.  Such is not the case here.

In a similar factual situation, the Illinois Supreme Court refused to apply the doctrine.  In re Moo's Estate (1953), 414 Ill. 54, 110 N.E.2d 194.  In Moo's Estate, the original will of the decedent could not be found after his death and the presumption of revocation arose.  There, like here, a copy of the will alleged to have been lost was presented to the court for probate.  Admission of the copy of the will to probate was denied.  The court holding that, where the evidence was insufficient to overcome the presumption of revocation, the doctrine of dependent relative revocation had no application in absence of evidence that the revocation of the old will depended upon the efficacy of the new will.  Here, we have no evidence that the revocation of the 1968 will depended upon the validity of the 1970 will.  The doctrine of dependent relative revocation has no application under these circumstances.

Having held that the doctrine of dependent relative revocation should not be applied in this case, we can find no merit in discussing the other issues raised in this appeal.  Determination of those issues would not affect the outcome of this appeal.

Judgment affirmed.

_____
Chief Justice

- 6 -

We concur:

_Jene B Daly_

_John Conway Harrison_

_Daniel J. Shea_

Justices