No. 80-72

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

IN THE MATTER OF THE ESTATE
OF MABEL I. COX

_____

Appeal from:    District Court of the Tenth Judicial District,
                In and For the County of Fergus.
                Honorable LeRoy McKinnon, Judge presiding.

Counsel of Record:

        For Appellant:

            Parrish, Knopp and O'Hare, Lewistown, Montana
            Bradley Parrish argued, Lewistown, Montana

        For Respondent:

            William Berger argued, Lewistown, Montana

_____

                        Submitted:  November 20, 1980

                        Decided:  DEC 24 1980

Filed:  DEC 24 1980

_Thomas J. Kearney_
                                               Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Raymond Cox appeals from an order of the Tenth Judicial District Court, Fergus County, admitting the holographic will of Mabel I. Cox to probate.

The determinative question is whether a will, bearing unexplained markings through its text when discovered, has been revoked by cancellation pursuant to section 72-2-321, MCA. We hold that such a will shall be presumed canceled by the testator with the intent to revoke, unless proven otherwise.

Mabel Cox died on May 16, 1979, leaving six children as survivors. The decedent's holographic will was found in her bedroom nightstand the following day by respondent Richard Cox, proponent of the will.

The will is written entirely in decedent's handwriting with two different-colored inks, on a single page of notebook paper. It is signed and dated May 30, 1973. The will consists of seven paragraphs listed down the page, plus an eighth paragraph slanted in the lower right-hand corner. Eight large X's have been drawn on the sheet such that all paragraphs except the slanted writing have markings through them or partially through them. Additionally, the words "Will and Testamony" (sic) which begin the will have been lined out three times. Thus, the will appears as follows:

Filed July 3, 1979
Nina L. Kent,
Clerk of Court

6849

~~Will and Testament~~ of Mabel Isabel Cox
This the 30 day of May, 1973. May 30, 19
Inventory Mutual & to be shared by six childre
Savings Certificates — have names on them
Savings account has name on it.

(  The Real Estate Property at 329 East Lake
Avenue, Lewistown to transfer to Richard L. Cox

1973 Chrysler (New Yorker) to transfer Kenneth A. Cox,
garden tractor & equipment — stay with Property

Blonde Oak Dresser & Hi Boy — Shirley Ann Kendrick
Ice Cream Parlor Set — Shirley Ann. Kendrick

( Four Poster bed, Dresser (HiBoy) Richard L. Cox
China Closet Richard L. Cox
Front room Furniture, Davenport, Rockers, Recliner Coffee table &
end tables William L. Cox
Book stand Small book stand
T.V. — Kenneth Cox Stereo — Lawrence Dale Cox
Tape Deck/Player — Raymond Cox
Double bed & dresser & Hi boy — Lawrence Dale Cox

Wood Mantle Clock — Shirley Ann Kendrick
Metal Mantle Clock Bill & Bobbie Cox
Pfaff Sewing Machine Ray Cox
( Refrigerators — Deep Freeze
Old Desk — Kenneth Cox
( Trunk in bsmt. Kenneth Cox
Trunk in Closet & Contents — Shirley Ann
Grandma (Thea Brenden trunk) for Thea Stanley
Mabel Isabel Cox

Other dishes, silver, Kettle etc. to share as desired. to Shirley Ann to Administer

—3—

The principal asset of the Cox estate is decedent's home, which would pass under the will to Richard Cox. Other assets include certificates of deposit valued at approximately $2,500 apiece, one held in joint tenancy between decedent and each child except Richard; and household furnishings which would pass variously to all six children under the will.

On June 11, 1979, Raymond Cox petitioned the District Court for an adjudication of intestacy and appointment of a personal representative. Thereafter, Richard Cox petitioned the court for formal probate of the will. The petitions were consolidated for hearing.

Neither party presented evidence at the hearing which explained the origin of the markings. The evidence was also inconclusive as to decedent's intended disposition of her estate. Testimony indicated that during the period shortly preceding her death, decedent had indicated that she wished to treat all children equally, and that she wished Richard to receive the house. Since the home comprised the largest portion of the estate, these expressed intentions were mutually exclusive.

The District Court found that there was no explanation for the X's on the will. Based on this finding, the court concluded that there was no sufficient proof of an intent to revoke the will, and granted the petition for formal probate. Opponents of the will appeal.

Appellant argues the court erred in concluding, based on the factual determination that there was no proof on the record explaining the presence of the markings, that there existed no sufficient proof of an

-4-

intent to revoke the will. The correct approach, appellant submits, is that the presence of the markings on a will discovered in the custody of a decedent should give rise to a presumption that the acts of mutilation were peformed by the testator with the intention to revoke. In re Kemper's Estate (1944), 157 Kan. 727, 145 P.2d 103. We agree.

The evidentiary burdens for will contests are prescribed by section 72-3-310, MCA:

> ". . . Proponents of a will have the burden of establishing prima facie proof of due execution in all cases and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof."

This procedure is essentially a codification of the common law. See, In re Colbert's Estate (1904), 31 Mont. 461, 466, 78 P. 971,/⁹⁷² There is no question that proponent's initial burden has been met.

The focal point of the case is the contestant's burden to prove revocation. Revocation by act may be effected only pursuant to section 72-2-321(2), MCA: "A will or any part thereof is revoked: . . . (2) by being burned, torn, canceled, obliterated, or destroyed with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction."

Clearly, the acts of cancellation here are sufficient to revoke a will, although the writing remains legible and the signature has not been obliterated. Intent to revoke is the controlling

factor, rather than the severity of the act which manifests that intent. The form and extent of the acts are then unimportant as long as they constitute a physical token of the intent to revoke. Kemper, 145 P.2d at 108.

This is a case of first impression insofar as it addresses the question of presumed intent within the context of a canceled will. Nevertheless, this Court has previously considered the same question within the destroyed/lost will context. Matter of Estate of Hartman (1977), 172 Mont. 225, 563 P.2d 569. Revocation by either destruction or cancellation is governed by section 72-2-321, MCA. The two means of revocation differ, in effect, only as a matter of degree; and we find the rationale of Hartman controlling in this closely analogous situation.

We therefore hold that where a will has been in the custody of the testator and is discovered among her effects in a canceled or defaced condition, the testator shall be presumed to have done the act with the intent to revoke. Hartman, supra; Atkinson, Wills § 101, at 554. Page, The Law of Wills § 29.140 at 700-01.

A will contestant may, in this and other similar instances, utilize this rebuttable presumption in meeting his burden of proving revocation. The proponent then has the burden of going forward with sufficient evidence regarding relevant factors and circumstances to rebut the presumption. Hartman, 563 P.2d at 574.

Proponent, at argument, emphasized three opponents' momentary possible access to the will and

opportunity to destroy it on the evening of Mrs. Cox' decease. However, the fact that the will contestants had a fleeting opportunity to tamper with the will does not, of itself, overcome the presumption; but, rather is a circumstance which must be considered with other proof. Matter of Travers' Estate (1978), 121 Ariz. 282, 589 P.2d 1314. Here the District Court determined there was no explanation for the markings. Proponent's conjecture regarding the origin of the markings aside, the finding is not a clearly erroneous evaluation of the record and may not be set aside. Rule 52(a), M.R.Civ.P. The presumed revocation, standing unrebutted, therefore controls.

Proponent finally submits that if the will is deemed revoked, it should be admitted to probate under the doctrine of dependent relative revocation. Under the rules set forth in Matter of Estate of Patten (1978), ____ Mont. ____, 587 P.2d 1307, 35 St.Rep. 1983, that doctrine clearly cannot apply here, where there is no superseding will and no evidence of any intent to execute one.

This Court has not yet specifically adopted the doctrine of dependent relative revocation in a case requiring that consideration. Authorities indicate, however, that dependent relative revocation only applies where there is a clear intent of the testator that the revocation of an old will be conditional upon the validity of the new will. The condition must be proven by substantial evidence of probative value, and evidence of the intent cannot be left to speculation, supposition, conjecture or possibility. Further, there must be an immediate intent to make a new will, and the

-7-

new will must be executed concurrently with or shortly after destruction of the old. Patten, 587 P.2d at 1309. None of these criteria have been established.

Reversed and remanded with instructions to grant the petition for adjudication of intestacy and to deny the petition for formal probate.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices