In the Matter of the ESTATE OF
William C. AUSLEY, a/k/a
W.C. Ausley, Deceased.

David E. HOOD, Appellant,

v.

Walter N. AUSLEY, Richard K. Ausley,
George G. Ausley, George Lynn Ausley,
Marguerette Andren, Charon Ann La-
mont, Maurice S. Ausley III, Ronnie L.
Ausley and Cheryl Ann Applewhite, Ap-
pellees.

No. 71940.

Supreme Court of Oklahoma.

Oct. 15, 1991.

Clyde Stallings, Durant, for appellant.

Richard L. Hull, Oklahoma City, for appellees.

LAVENDER, Justice.

The May 6, 1987 Last Will and Testament of William C. Ausley (Ausley or decedent) was sought to be admitted to probate by Robert Ausley, decedent's brother, who was a beneficiary in the will and named executor. Appellees, numerous relatives of decedent, filed contests. Appellees are Walter N., Richard K. and George G. Ausley, brothers of decedent; George Lynn, Maurice S. and Ronnie L. Ausley, nephews; and Charon Ann Lamont, Marguerette Andren and Cheryl Ann Applewhite, nieces. Walter N., Richard K. and George Lynn Ausley are beneficiaries in the will. Appellees argued the will was revoked. The trial court found revocation and ruled disposition of the estate would proceed by the laws of intestate succession.

Robert Ausley did not appeal. Appellant, David E. Hood, nephew of decedent's wife, and the only other beneficiary in the will, did. He first asserts the trial court erred in finding certain markings on the will constituted a revocation under 84 O.S.1981, § 101. Second, if the markings on the will constitute a revocation it was a dependent relative revocation, i.e. conditional upon a new legally effective will being executed by Ausley prior to death. In a 2–1 decision, the Court of Appeals, relying on 84 O.S.1981, § 103, reversed with instructions to admit the will to probate. · The majority held the revocation was intended to be only partial with a view to changing certain provisions of the will and, in accordance with § 103 was inoperative, because the new disposition was not legally effected. We previously granted certiorari

and now vacate the decision of the Court of Appeals and affirm the trial court. The evidence as presented through three witnesses and the original will follows.

Ausley contacted Richard Roland, an attorney, about drafting a new will. Roland met decedent at his residence in Sherman, Texas on June 7, 1988. At the meeting Roland saw the original and copies of the will. Roland observed them marked with "words like, void, signatures scratched out, big 'x's' on all the documents." He told decedent he wished he had waited until a new will was drafted before he had marked up the old and voided it. Roland was employed to draft a new will. He became ill and did not draft the proposed new will until June 15, 1988. He met with Ausley on June 16. Apparently, Roland had misunderstood decedent concerning some property in Oklahoma, which necessitated some unspecified change(s) to the proposed new will. Ausley died on June 20, 1988 before a new draft was presented to him. He never executed a new will. Roland also testified the legatees and executor in the proposed new will were the same as in the old.

Appellee, George Lynn Ausley was the next witness to testify. He visited Ausley many times in Sherman and met with him in early June 1988. He saw the will marked up, apparently in the same condition as observed by Roland. He felt the will had been voided and this view was in accordance with discussions he had with decedent.

The last witness to testify was Robert Ausley. He had possession of the will in his lockbox, apparently from the time it was executed. Decedent requested Robert bring him the will so some unspecified changes could be made in the percentages contained in it, according to Robert. Robert did so. Robert did not make the markings on the will. After Ausley's death he went to decedent's residence and retrieved the will, which was in one of Ausley's lockboxes. Robert also testified copies of the will contained unspecified markings on them, more markings than on the original.

The typewritten original will contains four pages. The first paragraph is introductory and indicates the document is Ausley's Last Will and Testament and he revokes any prior will. Next is Article One which directs Ausley's debts be paid from his estate. Article Two follows. It consists of two paragraphs. The first devises to Robert and appellees, Walter and Richard Ausley, decedent's real property in Bryan County. The second directs if any of these brothers predecease him, this real property shall go to the survivor or survivors in equal shares. In blue ink the word VOID, in letters at least an inch high, is printed diagonally across the two paragraphs comprising Article Two. Ausley's signature, as testator, appears at the bottom of page one. Although legible, blue ink scratch marks run through the signature and partially extend into the first paragraph of Article Three, which begins on page one and continues on page two.

Article Three is the residuary clause and disposes of the remainder of the estate, excluding the real property in Bryan County. Appellant was to receive 30%, Robert, 40%, and, appellees, Walter, Richard and nephew, George Lynn, 10% each. Next it directs if appellant predeceases Ausley, his bequest will go to Robert, Walter and Richard in equal shares or to the survivor or survivors of them. It finally provides if any of the three brothers predecease him, the bequest to a deceased brother will go to the survivor or survivors of the three named brothers.

Article Four follows on page two. It appoints Robert executor. In the event he cannot serve, Verbal Gearner is named. The paragraph directs no bond or security shall be required of the executor and no action should be had in court in relation to the estate other than probating and recording the will, return of an inventory and appraisement, and a list of claims of the estate. Powers of the executor are set forth. In blue ink the word VOID, in letters at least an inch high, is printed diagonally approximately across the middle of Article Four. Ausley's signature, as testator, appears at the bottom of page two. Although legible, blue ink scratch marks

run through the signature and partially extend into Article Four.

The third page is the signature and publication page in compliance with the formalities of 84 O.S.1981, § 55(1–4). Ausley's signature is found after a short publication paragraph, which consists of the first four lines of the page. It is not scratched out. Next is the attesting witness paragraph. Under it are the witnesses' signatures and addresses. In blue ink the word VOID, in letters at least an inch high, is printed diagonally beginning about the middle of the page and extending through the signature of one witness and the address of the other.

A self-proving clause is found on the last page and under it the signatures of Ausley and the witnesses in compliance with 84 O.S.1981, § 55(5). A subscription and acknowledgment clause executed by a notary in compliance with § 55(5) follows. In blue ink the word VOID, in letters at least an inch high, is printed diagonally beginning right above the subscription and acknowledgment clause of the notary and extending into the bottom portion of the self-proving clause. In blue ink a large X marks through the signatures of the notary, the witnesses and decedent. This was the evidence before the trial court.

■ A will contest is a case of equitable cognizance. *Matter of Estate of Beal*, 769 P.2d 150, 152 (Okla.1989). An appellate court must review and weigh the evidence, but the judgment should not be disturbed unless clearly against the weight of the evidence. *Id.*, *In re Estate of Bennight*, 503 P.2d 203, 204 (Okla.1972). This standard guides us.

■ Once made in compliance with statutory formalities a will cannot be revoked other than provided by statute. *In re Ballards' Estate*, 56 Okl. 149, 155 P. 894, 896 (1916); *In re Cabaniss' Estate*, 191 Okl. 340, 129 P.2d 1003, 1004–1005 (1942). The will here complies with § 55. On revoking a will § 101, *supra* provides:

Except in the cases in this article mentioned no written will, nor any part thereof, can be revoked or altered otherwise than:

1. By a written will or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator; or,

2. By being burnt, torn, canceled, obliterated or destroyed, with intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction.

■ For a ˙ valid revocation under § 101(2) two things are essential. There must be a physical act within the meaning of the statute and the act must be performed *animus revocandi*, i.e. with intent and purpose to revoke. *See In re Cabler's Estate*, 124 Okl. 275, 257 P. 757, 758–759 (1927); *In re Olmsted's Estate*, 122 Cal. 224, 54 P. 745, 746 (1898) (interpreting statute virtually identical to § 101). Appellant asserts failure to show compliance with § 101(2) because there was no evidence who put the word VOID and the marks on the will. We disagree.

■ Robert Ausley, *proponent of the will* below, had possession of the will *in his* lockbox, apparently from its execution until decedent requested it be brought to him. Robert brought it to decedent, he *did not* make the markings on the will and after Ausley's death he retrieved it from decedent's residence where it was found in one of *decedent's lockboxes.* The only two people shown to have possessed the will were decedent and the trial court *proponent* of it.

In an analogous situation involving a mutilated will, where testator's signature was torn from the body of the instrument, we held mutilation *animus revocandi* was a question of fact and where the testator, his housekeeper (*the proponent of the will*), and the housekeeper's associate, were the only persons shown to have had access to the will, the presumption must be indulged destruction was the act of the testator and was done with intent to revoke. *In re Cabler's Estate, supra,* 257 P. at 759; *See also Matter of Estate of Cox*, 190 Mont. 436, 621 P.2d 1057, 1061 (1980) (where holographic will has been in custody of testator

and is discovered among her effects in a canceled or defaced condition, testator presumed to have done act with intent to revoke). Although the presumption is rebuttable, we said in *Cabler's Estate* it stands until rebutted because possession of the will was not traced to any unfriendly possession [257 P. at 759], the same situation evident here.

■ Appellant also asserts, however, the markings on the will and printing the word VOID on each page are insufficient to show either cancellation or obliteration within the meaning of § 101(2).[1] He cites a definition of obliteration from BLACK'S LAW DICTIONARY 1226 (rev. 4th ed. 1968), which reads "[e]rasure or blotting out of written words" and part of the definition of cancel [*Id.* at 259], "[t]o obliterate" and argues because no words of the will are erased or blotted out obliteration or cancellation has not occurred. We cannot accept such a narrow view.

In *Noesen v. Erkenswick*, 298 Ill. 231, 131 N.E. 622 (1921), interpreting a statute similar to our own, the Illinois Supreme Court wrote the following in regard to the meaning of the word canceled:

> The writing was across and upon part of the signature, the date, the name of the executor, and the devise made by the will, and it would be difficult to conceive of more effectual cancellation by writing. Of course, a will may be canceled by erasing its provisions or rendering them illegible, which would amount to the destruction of the will; but to cancel does not necessarily mean that. It does mean to disannul, nullify, and declare null and void the instrument, to set at naught its provisions and declare it null and void. It is true that, notwithstanding the writing, the original will can be read, although with some difficulty, but that is equally true where there is a cancellation on the face of any instrument. Surely no one can be found who would say that a postage stamp is not canceled because he can still see that it is a postage stamp,

nor that a provision of any document is not canceled by drawing a line through it with pen and ink, although the words can still be read, nor that any banker, whatever he might think of other methods of cancellation, would pay a check canceled by writing across the face merely because he could see what the check was before cancellation. It would be going far beyond the statute to say that a will is not cancelled unless the words are erased or obliterated so that the nature of the will before cancellation, or its provisions, cannot be discovered.

*Id.* 131 N.E. at 623.

In oral argument below appellant also argued printing the word VOID across the language of the will should be construed under § 101(1), rather than § 101(2), and was ineffective as a revocation because the writing failed to comply with the formalities of § 55. Although the argument is not made here we feel constrained to answer it for a proper exposition of our view of the law.

Other jurisdictions have determined writing the word canceled or some similar word across the dispositive provisions or other material parts of a will operate as a revocation by cancellation and is not merely an unattested revocation controlled by statutes similar to § 101(1). *Boddy v. Boddy*, 77 N.M. 149, 420 P.2d 301, 303–304 (1966); *In re Barrie's Will*, 393 Ill. 111, 65 N.E.2d 433, 435–436 (1946). The rationale for the rule is found in 2 BOWE–PARKER: PAGE ON WILLS 362, § 21.9 (1960).

> If the word "canceled" is written across the dispositive provisions of the will or some material part thereof, such as the signature of the testator, no logical reason appears for refusing to treat it as a sufficient cancellation. Lines drawn across such portions of the will would operate as a cancellation, whether they are diagonal, horizontal, or irregular; and the fact that the lines are so arranged as to form words and letters which make the testator's intention to

---

**1.** The will was not burnt, torn or destroyed. Accordingly, the parties appear to agree the only possible methods of revocation applicable under 84 O.S.1981, § 101(2), are obliteration and/or cancellation.

revoke even more clear should not prevent these lines from having this same revoking effect. (citation omitted)

■ Merely because some of the markings formed the word VOID does not mandate application of § 101(1), rather than § 101(2), and words of cancellation written across dispositive provisions or other material parts of a will *may* evidence a revocation by cancellation under § 101(2).[2] Thus, if done with intent to revoke, the physical acts of printing the word VOID across material provisions and the other markings pointed out are clearly within the contemplation of § 101(2) as acts of cancellation. The question now is, were the acts performed with intent to revoke?

The Court of Appeals ruled on its view of the evidence printing the word VOID on each page and the other marks were placed there not to revoke the entire will, but merely "to show intended changes, or in an attempt to revoke a provision of the will in order to effect a new disposition". It thus held the matter controlled by § 103, *supra,* which provides:

> A revocation by obliteration on the face of the will may be partial or total, and is complete if the material part is so obliterated as to show an intention to revoke; but where, in order to effect a new disposition the testator attempts to revoke a provision of the will by altering or obliterating it on the face thereof,

such revocation is not valid unless the new disposition is legally effected.

■ The majority indicated a belief the second clause of § 103 was a codification of the common law doctrine of dependent relative revocation.[3] This is only partly correct. The second clause applies only where there is an attempted revocation of a *provision*[4] of the will, not where the *entire* will is intended to be revoked. We agree with Professor N.I. Kenderdine when she says in her work on Oklahoma wills:

> The provision of section 103 of title 84 that states that a partial revocation is not valid if it is made in an attempt to effect a new, invalid, disposition is nothing more than a codification of the dependent relative revocation doctrine as it applies to *partial* revocations by physical act. (emphasis added)

N.I. Kenderdine, Oklahoma Wills and Intestate Succession 163 (Butterworth Legal Publishers 1989). Thus, the second clause would be applicable where a testator attempts to revoke a dispositive provision of the will by physical act and also attempts to give that gift to someone else or attempts to increase or decrease a gift to the same person by interlineation on the will, but the attempted change fails because there was no compliance with the formalities of § 55. *Id.* at 157. In such situations § 103 mandates the attempted new disposition is invalid, the revocation ineffective and the original provisions

---

**2.** We recognize we have somewhat of a hybrid case. There are markings on the face of actual provisions of the will in the form of both written words, i.e. the word VOID on each page *and* cross-outs, i.e. the signatures of the testator on pages one and two and the signatures of the notary, witnesses and testator on the self-proving clause page. In such a case the written word VOID may be looked at as competent evidence to show the intention associated with the other act, i.e. the cross-outs appearing on other parts of the will.

**3.** In his appellate papers appellant did not rely on 84 O.S.1981, § 103, to support his argument of dependent relative revocation. The Court of Appeals noted it was raised in the trial court. As we read appellant's appeal brief he relies on the common law doctrine, what the Court of Appeals says is codified at § 103. As we detail in the text, although § 103 does include *part* of

the common law doctrine of dependent relative revocation, it is not coextensive with it. Accordingly, we find it necessary to dispose of both the Court of Appeals' view and that of appellant to properly decide this case.

**4.** We realize there may be situations where a testator attempts to revoke more than one provision of the will, but does not intend to revoke the entire will. We do not give the second clause of § 103 such a narrow construction that it would be applicable only where *one provision* is attempted to be revoked in order to effect a new disposition. However, the plain words of *the second clause make the following apparent.* The attempted revocation must be of something less than the entire will for the clause to apply. N.I. Kenderdine, Oklahoma Wills and Intestate Succession 157–158, 163 (Butterworth Legal Publishers 1989).

would be given effect, assuming they can be ascertained. The doctrine, however, has been applied in situations not only where a partial revocation was intended, but where the entire will was intended to be revoked. *Id.* at 162–164; Palmer, *Dependent Relative Revocation and its Relation to Relief for Mistake,* 69 MICH.L.REV. 989 (1971).

■ As we view the record, the trial court decision as to the inapplicability of § 103 and, to the effect, the revocation was intended to be of the entire will is not clearly against the weight of the evidence. The original will itself, with the word VOID on each page, coupled with the cross-outs of the testator's signature on pages one and two and the large X through everyone's signature on the self-proving clause page (the last page of the document), provides quite a bit of evidence the testator intended revocation of the entire document. *See Boddy v. Boddy, supra,* 420 P.2d at 304 (cancellation of almost all dispositive provisions, the prefatory clause and the corresponding ending declaration that the instrument is testator's will make it evident there was intention to revoke the entire will). In addition, there was the testimony of George Lynn Ausley that he saw the will in its marked up state when he met with decedent in early June 1988, he felt the will had been voided *and this view was consistent with his discussions with Ausley.* There was further testimony of Richard Roland that he told decedent he wished he had waited until a new will was drafted before he had marked up the old and voided it. Although no evidence was presented as to what Ausley responded to this statement, in that no attempt was made to somehow revalidate the marked up will, we believe at least a supporting inference may be drawn that it was the entire will which was intended to be revoked in light of the fact the only legal advice decedent had received was the will had been voided.

Although there was conflicting evidence, we do not believe the conflict shows the trial court decision is clearly against the weight of the evidence. In our view, the Court of Appeals erred because it merely substituted its view of the evidence for that of the trial court and, apparently, failed to follow the standard that although an appellate court must review and weigh the evidence, the judgment of the trial court *is not to be disturbed unless clearly against the weight of the evidence. Matter of Estate of Beal,* 769 P.2d at 152, *supra.* Thus, we find no grounds for reversal based on § 103 or to disturb the trial court decision that the intent was to revoke the entire will, rather than a part of it. Finally, we must determine whether the common law doctrine of dependent relative revocation is applicable in any event.

■ One of the better synopses of the doctrine is found in THOMPSON ON WILLS 262, § 168 (3rd ed. 1947):

> Under what has been termed the doctrine of "dependent relative revocation," if a testator, having made a will and desiring to make a new one, cancels the first will preparatory to making the second and thereafter fails lawfully to execute the same or make therein an invalid disposition of property, it will be presumed that he preferred the old will to an intestacy, and the old will is not revoked. The doctrine is said to be one of presumed intention, it being presumed that cancelation or destruction of the old will was intended to be upon making of a new one as a substitute for the old one. If the cancelation of the old will and the making of the new one were parts of one scheme, and the revocation of the old will was so related to the making of the new as to be dependent upon it, then if the new will be not made, or if made is invalid for any reason, the old will, though canceled, should be given effect, if its contents can be ascertained in any legal manner. (citations omitted)

We recognized the existence of the doctrine in *Phillips v. Smith,* 186 Okl. 636, 100 P.2d 249 (1939), but rejected its application because we found insufficient evidence to hold testator would have desired the first will preserved in the event the second failed in all its dispositive provisions. *Id.* 100 P.2d at 250, Third syllabus. We essentially noted in discussing the doctrine we

would not apply it arbitrarily, but would look to the record evidence to determine the intention of the testator. *Id.* at 254; *See also Matter of Estate of Patten,* 179 Mont. 299, 587 P.2d 1307, 1309 (1978) (doctrine should be applied with caution).

Courts from other jurisdictions have recognized the question of application of the doctrine is a factual one, just as we recognized in *Phillips. See e.g. In re Olmsted's Estate, supra,* 54 P. at 747–748; *McIntyre v. McIntyre,* 120 Ga. 67, 47 S.E. 501, 503–504 (1904); *In re Dougan's Estate,* 152 Or. 235, 53 P.2d 511, 521–525 (1936). It has also been said that if the testator intended revocation to be complete and to take effect at once, an intention to make a new will in the future will not operate to leave the original will in effect. *Id.* 53 P.2d at 525; *McIntyre v. McIntyre, supra,* 47 S.E. at 503. In other words, revocation of the old will and making of the new are viewed as independent acts.

From our review of the evidence, we cannot say the trial court erred by failing to apply the doctrine. As with the question of whether the revocation was intended to be of the entire will or only a part of it, the evidence as to the probable intent of decedent as to whether the revocation was intended to be complete and absolute is conflicting. The decision of the trial court to reject application of the doctrine cannot be said to be clearly against the weight of the evidence. The same evidence we outlined to support the former conclusion is equally applicable to support rejection of dependent relative revocation.

■ Furthermore, application of the doctrine here would have been particularly hazardous for the reason the doctrine should not generally be applied in the absence of judicial knowledge of a definitive plan which would normally be expressed in the subsequent will, something which was not before the trial court. Palmer, *De-*

*pendent Relative Revocation and its Relation to Relief for Mistake, supra,* 69 MICH.L.REV. at 993–994. Although there was evidence before the trial court the beneficiaries in the *draft* of the second will were the same and the *proposed* new will was only for the purpose of changing the percentages these beneficiaries were to receive, we believe such evidence alone was insufficient to mandate application of the doctrine in light of the other evidence in the record tending to show an absolute, unconditional revocation of the will.[5] Accordingly, it is our view the Court of Appeals erred by disturbing the trial court decision which cannot be said to be clearly against the weight of the evidence.

For the above reasons, the decision of the Court of Appeals is VACATED and the judgment of the trial court is AFFIRMED.

OPALA, C.J., and SIMMS, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

KAUGER and SUMMERS, JJ., concur in part, dissent in part.

SUMMERS, Justice, concurring in part and dissenting in part.

The Court correctly expounds the applicable law on revocation of wills and the related doctrine of dependant relative revocation. I dissent only from the majority's refusal to apply the latter doctrine to the facts before us. The beneficiaries in the old, cancelled will were the same beneficiaries as in the draft of the new, intended will. Only the percentages these beneficiaries were to receive were changed. Some seven heirs at law, all of whom will prosper from the majority's treatment, were left out of both Mr. Ausley's testamentary efforts.

The doctrine of dependant relative revocation, as described by the majority in its quote from *Thompson on Wills,* § 168 (3rd ed. 1947), certainly seems applicable. It is

---

5. We do not mean to say the doctrine would never be appropriately applied in the absence of an executed subsequent will or codicil that for some reason was invalid. *But see In re Holt's Estate,* 405 Pa. 244, 174 A.2d 874, 876–877 (1961); *In re Emernecker's Estate,* 218 Pa. 369, 67 A. 701, 702 (1907). However, in our view for

a determination to be intelligently made of the probable intent of a decedent, the terms of the "new" will must normally be shown with some specificity and that such terms are definitive. Without such information, there is no, or little basis, for saying decedent would have preferred the old will over intestacy.

said there that when the testator "cancels the first will preparatory to making" a new one, and thereafter fails to lawfully execute the new one, then "it will be *presumed* that he preferred the old will to an intestacy, and the old is not revoked." *Id.* at 262. (emphasis mine). The evidence, though partly circumstantial, appears indisputable that the testator's acts cancelling and marking "VOID" the old will were in anticipation of making a new one. The presumption, then, is that given the choice he would have preferred the cancelled will to intestate succession. Is there evidence to overcome the presumption? I find none. Instead, the evidence is that the same five beneficiaries are carried forward from the old will into the new will, to the continued exclusion of the seven other heirs at law. This evidence strongly indicates to me that the testator would have preferred the cancelled will over no will at all and intestate succession. The majority concludes otherwise.

Our court having recognized the existence of the doctrine of dependant relative revocation in *Phillips v. Smith*, 186 Okl. 636, 100 P.2d 249 (1939), I would rule it applicable in this case, find that the trial court's holding was against the clear weight of the evidence, and order the old will admitted to probate.

I am authorized to state that Justice KAUGER joins in these views.